BOSTON EL. RY. CO. v. GRACE & HYDE CO. et al.

GRACE & HYDE CO. et al. v. BOSTON EL. RY. CO.

(Circuit Court of Appeals, First Circuit. December 3, 1901.)

Nos. 339, 348.

1. **LANDLORD AND TENANT—RIGHT OF ACTION FOR WRONGFUL RE-ENTRY—EQUITABLE OWNER OF INTEREST IN LEASE.**

A contract by which a lessee agrees to assign to another a part interest in the leasehold, but which remains executory, no formal transfer having been made, at the time the lessor enters upon the property for the purpose of terminating the lease, operates to give the second party only an equitable interest in the leasehold estate, which will not support an action at law by him against the lessor to recover damages for the re-entry.

2. **PLEADING—EFFECT OF DECLARATION OF USE.**

A declaration of use in a plaintiff's writ implies either that the beneficial owner of the entire legal cause of action has brought suit in the name of the legal plaintiff, or that the legal owner is suing his entire cause of action for the benefit of a third person. No intention to divide the cause of action or to surrender all the plaintiff's right, except what he may have previously transferred to the usee, can be inferred from such declaration of use.

3. **LANDLORD AND TENANT—BREACH OF CONDITION AGAINST SUBLETTING—CONSTRUCTION OF CONTRACT.**

A contract between a lessee and another, by which the latter agrees to build certain structures on the leased premises, and is given a lien for the contract price and the right to have exclusive possession of the premises and structures, and to manage the same and receive the income therefrom until his expenditure is repaid, does not amount to a subletting in violation of a condition of the lease; but the contractor holds the possession under such contract only as an agent of the lessee.

4. **SAME—FORFEITURE OF LEASE FOR BREACH OF CONDITION—RE-ENTRY.**

A breach of condition of a lease by the lessee does not work a forfeiture, without some act on the part of the lessor claiming it; and a lessor who has re-entered for other reasons cannot justify such re-entry by assigning a breach which was not in fact acted upon or claimed at the time.

5. **SAME.**

Under a lease of grounds by a street railroad company as lessor, by which the lessee covenanted to erect certain structures thereon for the entertainment of visitors, and to give a continuous exhibition therein "while the weather of each year permits," the company having a valuable interest in such exhibitions from the fact that it derived an income from the carriage of visitors to and from the grounds, the lessor was entitled to re-enter for breach of such condition, if the lessee failed to reasonably comply therewith, whether such failure was due to inability or to mere neglect.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Thomas Hunt (Gaston, Snow, & Saltonstall, on the brief), for Boston El. Ry. Co.

Hugh W. Ogden (Samuel J. Elder and Sherman L. Whipple, on the brief), for Grace & Hyde Co. and others.

Before COLT, Circuit Judge, and WEBB and BROWN, District Judges.

BROWN, District Judge. The plaintiffs named in the writ and declaration in the circuit court were two corporations of the state of Illinois, the Grace & Hyde Company and the Paul Boyton Company; the latter suing, as appears by the writ, "for the use and benefit of the Grace & Hyde Company, plaintiff in interest." The writ designated the action as "an action of tort." The case was for the recovery of damages for an alleged unlawful entry of the railway company on land on Huntington avenue, in Boston. At the trial the court ruled that the Grace & Hyde Company was improperly joined as co-plaintiff. By amendment, the action then proceeded with a single plaintiff, the Paul Boyton Company, "for the use and benefit of the Grace & Hyde Company, plaintiff in interest." After verdict for the plaintiff, both plaintiff and defendant sued out writs of error.

We will first consider the question of the rights of the Grace & Hyde Company in the action. The land on which entry was made was leased by the railway company to the Paul Boyton Company for the term of five years from February 1, 1896. The entry was made on May 24, 1898, by the railway company to terminate the lease; and written notice thereof was given in the following terms:

"Boston, May 24, 1898.

"To the Paul Boyton Company—Gentlemen: You are hereby notified that the West End Street Railway Company, by its attorney, the Boston Elevated Railway Company, and the Boston Elevated Railway Company, in its own right, as lessee of the West End Street Railway Company, have this day, in accordance with the provisions of the lease, entered upon the premises covered by a lease between the West End Street Railway Company and the Paul Boyton Company, dated January 1, 1896, for breach of the conditions and stipulations thereof, and by said entry have terminated said lease and the term thereof."

Whatever right or interest was possessed by the Grace & Hyde Company at the date of the entry arose from its agreements with the Paul Boyton Company. It is necessary to refer to the provisions of the lease and of written contracts between the Boyton Company and the Grace & Hyde Company. By the lease the Paul Boyton Company covenanted with its lessor, the railway company, "that it will, within six months of the date hereof, erect on the said land a chute and other structures, apparatus, and equipments, for the amusement and exhibition called 'Shooting the Chute,' and will maintain the same thereafter, and its exhibition thereof during said term shall be continuous while the weather of each year permits." The lease provided, also, that the lessee should not assign nor underlet without the written consent of the lessor.

On the 8th day of January, 1896, the Paul Boyton Company made an agreement in writing with the Grace & Hyde Company, an Illinois corporation, whereby the Grace & Hyde Company agreed to erect a chute or water toboggan slide and appurtenances, and to find all the funds necessary to complete the work, and to complete the work by May 1, 1896. It was agreed that the compensation of the Grace & Hyde Company should be the actual cost plus 15 per cent. for profit; "but to the extent of $17,500 of said compensation said Grace & Hyde Company shall depend entirely for payment on their lien upon, and the income derivable from, said chute enterprise, provided for in paragraph 3," etc. Paragraph 3 provided:

"For the purpose of providing means and security for the payment of all sums of money which shall be owing to said Grace & Hyde Company under this contract, they are hereby given a lien upon, and shall have the right to obtain and hold exclusive possession and control of and receive all the income from said leased premises and said chute, and all structures, improvements, and privileges incident thereto, until the whole amount owing to said Grace & Hyde Company is fully paid, with the right to manage and operate the same when ready to use, and to employ all necessary help for that purpose, and with power to grant privileges and concessions to others for amusement, refreshment, and other purposes. And from the earnings and income therefrom received by said Grace & Hyde Company they shall first pay and discharge all the expenses pertaining to the custody, maintenance, and operation thereof, including compensation of a superintendent or general manager; and after payment of all cost, charges, and expenses for perfecting, maintaining, and operating the whole of said chute enterprise and all its appurtenances, the net earnings and income therefrom shall be applied by said Grace & Hyde Company, first to the discharge of said $17,500, and next to the payment of whatever shall remain owing to them under this contract; and, when fully paid, their exclusive possession shall cease, and thereupon their ownership of one-third of the whole chute enterprise and its incidents shall become absolute, as hereafter provided. While said Grace & Hyde Company owe such exclusive possession, all reasonable access to the accounts, and means of verifying the same, shall be allowed said Paul Boyton Company."

Pursuant to the terms of the agreement, the Grace & Hyde Company erected the chute, and remained in control until the amount expended, plus 15 per cent., had been wholly repaid, so that, at the date of the entry, the Grace & Hyde Company was entitled, under the terms of the agreement, to a one-third interest in the property and enterprise, and the Paul Boyton Company to a two-thirds interest. As to the leasehold interest, the contract between the Grace & Hyde Company and the Boyton Company was executory. The railway company had not given its assent to the transfer of any interest in the lease; and, though a bill of sale had been executed by the Boyton Company, by its terms transferring to the Grace & Hyde Company one-third of the chute enterprise, including the leasehold, this bill of sale had not been delivered; and the Grace & Hyde Company had acquired no legal rights in the leasehold estate.

The learned judge correctly charged that:

"The contract between Grace & Hyde Company and the Boyton Company was of a complicated character; but it had all been sifted out at the time this entry was made, so that at that time the Grace & Hyde Company had no interest, except an equitable interest to receive from the Boyton Company an assignment of one-third of its interest in the enterprise."

It is contended, however, that by written agreements made between the Boyton Company and the Grace & Hyde Company, subsequent to the date of entry and prior to the date of the writ, the whole interest of the Boyton Company, including its right of action for an illegal entry, was assigned to the Grace & Hyde Company, so that, by virtue of the statutes of Massachusetts (St. 1897, c. 402, § 1), the Grace & Hyde Company as assignee was entitled, at the date of the writ, to sue in its own name for the recovery of the entire damages due to the illegal entry and termination of the lease.

We are of the opinion, however, that the documents of June 30th conveyed no rights of action, and that the Grace & Hyde Company was not entitled to maintain suit as assignee. We agree with the conclusion of the circuit court upon this point. Furthermore, a serious doubt arises whether, by these agreements, the Grace & Hyde Company did not devest itself of the equitable rights which it had on the 24th day of May, 1898, the date of entry; for the Boyton Company was released from further performance of its agreement with the Grace & Hyde Company, and conveyed its leasehold interest subject to the consent of the lessor, the railway company.

Upon the brief for the Grace & Hyde Company et al., it is said:

"This agreement of June 30th was an agreement whereby the Paul Boyton Company gave up all its interests in this part of the country, handed over everything it possessed to the Grace & Hyde Company, and withdrew from the state of Massachusetts absolutely."

The Grace & Hyde Company could no longer work out its equities through the Boyton Company during the unexpired term of the lease, and acquired for itself no right to occupy the land save by the consent of the lessor.

We do not, however, need to determine the effect of these agreements, and their bearing on the question of damages, since we are of the opinion that, even if it be conceded that, on the date of the writ, the Grace & Hyde Company still retained the equitable interest which it had on the date of the entry, such interest was insufficient to support a suit at law, either in its own name or in the name of the Boyton Company. We find no error in the ruling of the circuit court that the Grace & Hyde Company should be stricken out as plaintiff.

We are of the opinion, however, that there was error in allowing the cause to proceed after this amendment as a cause in which the Boyton Company was but a nominal plaintiff and the Grace & Hyde Company the real party in interest. If the railway company was liable for an illegal entry, its liability was to a single plaintiff in a single action, and its liability was for the entire damages caused to its lessee, the Boyton Company, by the termination of the lease. The cause of action was indivisible. If the Boyton Company was a real plaintiff in interest, and only its rights were in issue, it could not divide the cause of action by bringing suit for damages merely to the amount of the value of the equitable interest of the Grace & Hyde Company.

The circuit court was of the opinion that, though the cause of action was at law theoretically indivisible, it nevertheless had been practically severed, for the reason that by the terms of the writ the action

was limited so as to cover only the interest of the Grace & Hyde Company, and that by the consent of the parties or by estoppel the cause of action might be divided, not for the purpose of permitting two suits, but for the purpose of barring any suit, except so far as the interests brought before the court in the pending case were concerned.

It is true, of course, that if the Boyton Company, by its voluntary act, had abandoned its rights of action against the railway company for two-thirds of the damage, the railway company would have no substantial ground of complaint in the fact that it was sued for one-third only of the damages resulting from its tort; but, unless this record shows an abandonment by the Boyton Company of two-thirds of its claim for damages, there has clearly been a mistrial.

The case was sent to the jury with instructions to the effect that they should assess the entire damages caused to the Boyton Company by the tort of the railway company, but should divide the amount by three, and return a verdict for one-third of the entire damages as the value of the equitable interest of the Grace & Hyde Company. Following those instructions, the jury returned a verdict for the plaintiff for damages to the amount of $8,166. To reach this verdict, the jury must have found, therefore, that the Boyton Company's entire damages were $24,498. To sustain this verdict in favor of the Grace & Hyde Company, plaintiff in interest, for $8,166, we would be obliged to hold, also, in effect, that the Boyton Company, in the course of this litigation, has by its voluntary act or by estoppel lost a sum twice as great, to which, prior to the date of the writ, it was legally entitled.

The error which, in our opinion, has led to such an unsatisfactory result in this litigation, is that the Boyton Company has been treated both as a merely nominal party and also as the real party in interest. The defendant offered in evidence the record of a directors' meeting of the Boyton Company on the 26th day of November, 1898 (prior to the date of the writ), for the purpose of showing that the directors of the Paul Boyton Company had passed a vote declining to permit the Grace & Hyde Company to bring suit in the name of the Paul Boyton Company, and also as tending to show that the Grace & Hyde Company had no authority to maintain this action. The court ruled that this record was not relevant, because the rights of the Grace & Hyde Company, if it had any rights, to use the name of the Paul Boyton Company in this case, were fixed at the date of entry; and the directors of the Paul Boyton Company could not deprive the Grace & Hyde Company of its rights by any action that they might take. But nothing can be clearer than that one who has merely an equitable interest in one-third of the proceeds of a cause of action cannot, by virtue of that fact, bring a suit in the name of another who has the entire legal interest and two-thirds of the equitable interest as well. The Grace & Hyde Company could not, by virtue of its interest, bring an action in the name of the Boyton Company against its consent, and thereby create an estoppel which would destroy the rights of the Boyton Company of the value of $16,332. The rejection, upon this ground, of evidence tending to show that the Grace & Hyde

Company had no authority to institute this action in the name of the Boyton Company was inconsistent; for, without express authority from the Boyton Company, no estoppel could be created.

The jury were instructed that the Grace & Hyde Company was the only plaintiff in interest; also, that the plaintiff was entitled to elect to bring a suit for the entire value of the lease, to wit, what the plaintiff had as of the hour of the day when the entry was made, in May, 1898; and that the plaintiff had a right to elect, and had elected, to bring a suit for the entire value of the lease. It is obvious, however, that the Grace & Hyde Company was not, by virtue of its one-third interest, entitled to make any election as to the remedy. That was entirely in the hands of the Boyton Company, which had the legal rights. It is clear that the Grace & Hyde Company was a stranger to the two-thirds interest of the Boyton Company, and could create no estoppel affecting the same.

Does the record disclose an estoppel of the Paul Boyton Company,—an admission made by it that it no longer has any individual rights of action for its two-thirds interest? The declaration discloses no allegations creating an estoppel or showing an election. The only evidence of abandonment or estoppel is found in the writ, which names the Paul Boyton Company as plaintiff, "for the use and benefit of the Grace & Hyde Company, plaintiff in interest." According to respectable authority, the expression of a use may be disregarded as surplusage. Its purpose is to guard the interest of the usee against the adverse action of a nominal plaintiff. It is held that such a phrase has no force to make an issue different from what it would have been if the phrase had been left out. It is held, also, that the declaration of use is no part of the pleading. Bentley v. Insurance Co., 40 W. Va. 729, 739, 23 S. E. 584; Belton v. Gibbin, 12 N. J. Law, 77; State v. Johnson, 52 Ind. 197; Clay Fire & Marine Ins. Co. v. Huron Salt & Lumber Mfg. Co., 31 Mich. 346, 355; Northrop v. McGee, 20 Ill. App. 108; Tedrick v. Wells, 152 Ill. 214, 217, 38 N. E. 625; Hobson v. McCambridge, 130 Ill. 367, 375, 22 N. E. 823; 15 Enc. Pl. & Prac. 484, 498.

Upon its face, the language implies either that the beneficial owner of the entire legal cause of action has brought suit in the name of the legal plaintiff, or that the legal owner of the entire cause of action is suing his entire cause of action for the benefit of a third person. We think that no intention to divide a cause of action can be inferred from a mere declaration of use. The language does not mean that the legal plaintiff is suing for only such a proportion of the legal interest as the usee may, upon a trial, be proven to have derived from the legal plaintiff; nor does there appear to be any ground for holding it to be the expression of an intention voluntarily to surrender all the plaintiff's rights, except what he may have previously transferred to the usee.

When it appeared from the evidence that the Grace & Hyde Company had only an equitable interest to the extent of one-third, it followed, not only that it should be stricken out as a coplaintiff, but that it could have no control of the case, and was not a real or beneficial party whose interest could be recognized. It then appeared

that there was but one plaintiff who was entitled to maintain and control the suit,—the Paul Boyton Company in its own right.

Various assignments of error as to the question of possession and as to the proper rule of damages are based upon the contention that the declaration states technically an action of trespass quare clausum fregit, and that the plaintiff, if it seeks compensation for the value of the unexpired term of the lease, has mistaken its form of action. In view of the fact that the form of action permitted by the Massachusetts practice is "an action of tort," and of the fact that the second count might perhaps be regarded as sufficiently setting forth the elements of an action on the case, we have doubts as to the substantial character of the contentions as to possession and as to the rule of damages. See Gooding v. Shea, 103 Mass. 360, 4 Am. Rep. 563; Seneca Road Co. v. Auburn & R. R. Co., 5 Hill, 170.

We do not deem it necessary or useful to determine the numerous assignments of error based upon technical rules as to the division of actions, since the questions which relate to the form of action, rather than to the substantial rights, might be obviated by amendment in the circuit court, if that were necessary, which we do not decide.

The question whether the contract of the Grace & Hyde Company was ultra vires, while of doubtful importance, seems to disappear in consequence of our decision as to the status of the Grace & Hyde Company in this litigation.

The defendant's thirty-first assignment of error is for a denial of the request for a ruling that "the agreement between the Paul Boyton Company and the Grace & Hyde Company, annexed to the declaration, marked 'B,' amounts to a subletting, and constitutes a breach of the conditions of the lease to the Paul Boyton Company." We think that this request was rightly refused, and that, upon a fair construction of the document, it neither created nor contemplated a subtenancy. The conveyance of any immediate interest in the leasehold is in express terms negatived. The chute and appurtenances were to be constructed and equipped "for said Paul Boyton Company." Such possession as was taken by the contractors for this purpose was clearly not a possession of a subtenant.

The Grace & Hyde Company were also to have a lien upon the chute enterprise and the income therefrom. The provisions for a lien show clearly that, from the opening of operations, the enterprise and exhibition was that of the Paul Boyton Company, and not that of the Grace & Hyde Company. The Grace & Hyde Company could not have a lien upon their own enterprise, or upon their own income. The provision that the Grace & Hyde Company should have the right "to obtain and hold exclusive possession and control of, and receive all the income from, said leased premises and said chute, and all structures, improvements, and privileges incident thereto, until the whole amount owing to said Grace & Hyde Company is fully paid," is expressly limited to the single purpose of providing means and security for the payment of moneys owing to the Grace & Hyde Company, and to enable it to enforce its lien. The income was to be the property of the Boyton Company, and to be applied to the extinguishment of its debt to the Grace & Hyde Company.

The Grace & Hyde Company, if it chose as a lienor to exercise its right to exclusive possession, became the agent of the Paul Boyton Company to "manage and operate," to employ help, and grant privileges and concessions, etc. Its powers as agent are conferred, defined, and limited in express terms. It is accountable to the Boyton Company for the receipts, and must apply them to the payment of the Boyton Company's bills. Its occupation and possession, while it was working out its lien and creating the income to which the lien attached, was in legal effect that of a manager or agent for the Boyton Company. Though it had an interest as a lienor in having exclusive possession and control, its relation to the Boyton Company was in no sense that of a tenant, but that of a manager who had been given a free hand and freedom from interference while carrying on the business of his principal, in whose success he was interested.

The words "exclusive possession," when read, as they must be, in connection with the other provisions of the contract, and not as an isolated phrase, afford no substantial ground for the contention that a subtenancy was created. Furthermore, the mere fact that a breach of the condition against subletting had occurred would have been, in itself, insufficient support of a plea in justification. Conditions of forfeiture for breach of condition are strictly construed. It was incumbent upon the defendant to support its plea in justification by showing, not only that there was a breach, but that the landlord did in fact exercise the option to terminate the lease for breach of that condition. The lease becomes void only where the landlord avails himself of his privilege or option. A breach does not work a forfeiture without some act on the part of the lessor claiming it. Tayl. Landl. & Ten. (8th Ed.) §§ 489, 492, 493.

An entry made for other breaches of condition, and without knowledge of this breach, cannot be regarded as an exercise by the lessor of the option to take advantage of this breach. The entry in this case was, upon the evidence, manifestly for breach of the condition requiring a continuous exhibition while the weather permitted. There was no evidence tending to show an exercise by the lessor of the option to take advantage of a breach of the condition against subletting. The lessor, after entry for other reasons, should not be permitted to mend its hold by assigning other breaches which the ingenuity of counsel may be able to point out, and upon which the lessor did not in fact exercise its option.

We are further of the opinion that the learned judge erred in the instructions to the jury relative to that condition of the lease which provides that the exhibition of the chute "shall be continuous while the weather of each year permits." The question for the jury should have been whether, in view of all the circumstances and of the nature of the business, there had been a substantial breach of this condition by the failure of the plaintiff to open the exhibition prior to the date of entry, May 24, 1898. Upon the whole charge, we think that the jury would probably have been left to understand that, unless the failure to open the exhibition was due to inability to do so, the entry was not justified. While the fact of inability may have been relevant to the question whether there had

been a substantial breach of the condition at the date of entry, a failure to comply reasonably with the provisions for a continuous exhibition "while the weather of each year permits" would have justified the entry, whether the failure were due to inability, or to mere neglect not due to or coupled with inability. As there is evidence in the case tending to show that there had been a substantial breach of this condition, and as the railway company had a valuable interest in the seasonable opening of the chutes, from the fact that it derived an income from the carriage of visitors to and from the exhibition, it appears by the evidence that there is a somewhat close question of fact as to whether or not the entry was justified. Upon so close a point, we think that the instructions which are the basis of the forty-first assignment of error, and which were in substance reiterated in other portions of the charge, tended to mislead.

We do not deem it useful to consider the remaining assignments of error.

The judgment of the circuit court is reversed, the case is remanded to that court for further proceedings not inconsistent with this opinion, and neither party recovers costs in this court.