## BOSTON ELEVATED RY. CO. v. PAUL BOYTON CO.

(Circuit Court of Appeals, First Circuit. December 19, 1913. On Petition for Rehearing, April 3, 1914.)

### No. 974.

1. ACTION ON THE CASE (§ 4*)—NATURE OF ACTION—CONSTRUCTION OF DECLARATION.

A declaration, alleging a lease of ground by defendant to plaintiff, defendant's wrongful entry thereon, and expulsion of plaintiff before the expiration of the term, and the subsequent continued exclusion of plaintiff during the remainder of the term with consequent damage to plaintiff, *held* to state a cause of action of trespass on the case under the Massachusetts practice in which plaintiff might recover indemnity for loss of the right to use and occupy the premises during the remainder of the term.

[Ed. Note.—For other cases, see Action on the Case, Cent. Dig. §§ 42–46; Dec. Dig. § 4.*]

2. LANDLORD AND TENANT (§ 180*)—WRONGFUL EVICTION—EVIDENCE—SUFFICIENCY.

Evidence considered, in an action on the case to recover damages for the alleged wrongful entry upon and eviction of plaintiff from premises which it held as tenant, and *held* sufficient to establish plaintiff's possession at the time of the entry.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 715–729; Dec. Dig. § 180.*]

3. ESTOPPEL (§ 68*)—EQUITABLE ESTOPPEL—INCONSISTENT POSITIONS IN JUDICIAL PROCEEDINGS.

Where, from the admitted facts in an action to recover damages for the alleged wrongful entry upon and eviction of plaintiff from certain premises of which it was tenant, it appeared that defendant had leased the premises to plaintiff for a term of five years, and that during such term and on the day alleged in the declaration defendant entered upon and took possession of the premises for the expressed purpose of terminating the lease under its terms for breach of a condition which plaintiff could only have committed if in possession, evidence relied upon by defendant to justify its entry *held* to estop it from claiming at the trial that plaintiff was not in possession when the re-entry was made.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

4. EVIDENCE (§ 357*)—COPY OF LETTER—COMPETENCY.

A copy of a letter not shown to have been sent or received *held* not admissible to prove a statement made therein which was at most only the opinion of the writer.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1492–1499; Dec. Dig. § 357.*]

5. EVIDENCE (§ 546*)—COMPETENCY OF EXPERTS—DISCRETION OF COURT.

Upon the question of the value of the unexpired term of a lease for premises upon which plaintiff as tenant had built amusement chutes, it was within the discretion of the court to admit as expert testimony, to be considered with other testimony, the opinions of witnesses who, al-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

though not familiar with the value of real estate in the vicinity, were experienced in building and conducting such chutes as places of public amusement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2363; Dec. Dig. § 546.*]

**6. LANDLORD AND TENANT (§ 180*)—ADMISSIBILITY OF EVIDENCE—BREACH OF LEASE.**

Upon the question of the value of the unexpired term of a lease of premises upon which chutes for public amusement purposes had been ·built and operated during the two previous seasons, it was not error to admit evidence tending to show the receipts, expenses, and net profits of the business during such seasons as an element to be considered by the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 715–729; Dec. Dig. § 180.*]

**7. CORPORATIONS (§ 559*)—EFFECT OF APPOINTMENT OF RECEIVER FOR PLAINTIFF—PENDING SUITS.**

The appointment of a receiver for a plaintiff corporation pending a suit did not abate the action, nor was it error to permit it to proceed in plaintiff's name, where the receiver did not ask to intervene, and no motion was made to have him substituted as plaintiff.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2241–2252, 2259; Dec. Dig. § 559.*]

In Error to the District Court of the United States·for the District of Massachusetts; Clarence Hale, Judge.

Action at law by the Paul Boyton Company against the Boston·Elevated Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thomas Hunt, of ·Boston, Mass. (Gaston, Snow & Saltonstall, of· Boston, Mass., on the brief), for plaintiff in error.

Hugh W. Ogden, of Boston, Mass. (Samuel J. Elder and Whipple, Sears & Ogden, all of·Boston, Mass., on the brief), for defendant in error.

Before DODGE, Circuit Judge, and ALDRICH and BROWN, District Judges.

DODGE,·Circuit Judge. This suit was brought in March, 1899, in the Circuit Court. As originally brought, the plaintiffs in it were the Grace & Hyde Company and the Paul Boyton Company for the Grace & Hyde Company's use and benefit.· A judgment for the plaintiffs entered February 3, 1900, was reversed on the defendant's exceptions by this court December 3, 1901, 112 Fed. 279, 50 C. C. A. 239.· After the mandate, the declaration was amended by making the Paul Boyton Company sole plaintiff, and·also by substituting a single count for the two counts contained in the declaration upon which the case first went to trial. A demurrer to the amended declaration was overruled in July, 1906.

At the second trial, in November, 1907, there was again a verdict for the plaintiff. Judgment was entered on this verdict in March, 1912, and the case is ·again here on the. defendant company's exceptions. The defendant, here plaintiff in error, will be hereinafter referred to as the "defendant," and the Paul Boyton Company, here defendant in error, as the "plaintiff."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The West End Street Railway Company, which may be regarded as identified with the defendant for the purposes of this case, leased a tract of land in Boston to the plaintiff for five years from February 1, 1896. The amended declaration alleges that on May 24, 1898, the defendant wrongfully and unlawfully entered upon the leased premises, expelled the plaintiff from them, took possession of them, and refused possession, use, and enjoyment of them to the plaintiff at all times thereafter. This is the violation of its rights whereof the plaintiff complains and for which it seeks to recover damages. Its writ describes the action as an action of tort.

The objection raised by demurrer was that the declaration did not allege the plaintiff to have been in possession of the premises at the time of the alleged entry and trespass. The court held in overruling the demurrer, as appears from the opinion dated July 17, 1906, that although ownership of the premises at the time in any one had not been directly stated, yet it sufficiently appeared from the facts stated, as against the defendant, that the close was the plaintiff's. The court also held that an allegation of possession in the plaintiff was unnecessary if there was a sufficient allegation of its ownership, though possession would have to be proved. The court regarded the declaration as too loosely drawn and as leaving too much to inference, and suggested that, if it was to be further amended by being made more definite, the amendment should be then made. None has been made, however, nor has the overruling of the demurrer been assigned as error. The second trial was upon the amended declaration as it stood, notwithstanding the court's suggestions.

The Massachusetts system of pleading includes all actions of trespass and trespass on the case in the category of "actions of tort." If there is a remedy for the wrongs complained of in the declaration otherwise than by an action of contract, the remedy must be according to some one of the forms of action just referred to, and to whichever of them it may correspond it will be an action of tort under Massachusetts laws.

[1] 1. The defendant insists that the declaration states only an action of trespass q. c. f., that it alleges "a direct, unlawful entry upon real property, without more"—"merely that there was a direct, momentary, unlawful entry, and no more." But, however open to criticism in some respects, we think the allegations of the declaration such that they cannot fairly be taken in a sense so limited. After alleging the lease of the premises to the plaintiff, and the erection by it of certain structures thereon in accordance with the lease, and the use of these structures by it while in possession as tenant under the lease, the declaration continues thus:

"On or about the twenty-fourth day of May, 1898, and while there was an unexpired balance of term of two years and a half, the defendant wrongfully entered into and upon said premises and expelled the plaintiff from occupation thereof, and itself took possession of said premises and all structures which had been erected thereon by the plaintiff, and has ever since declined and refused to permit the plaintiff to come upon said premises or have the use or enjoyment thereof, or there conduct its profitable business in the management and operation of said amusement and exhibition."

And it then claims, as special damages, that the plaintiff has thereby lost benefits and profits which would · have accrued to it from its occupation and use of the premises and of the structures erected on them under the lease, and would continue to suffer such loss · until the lease expired. The action, as has appeared, was brought before the expiration of the term.

We cannot agree with the defendant that such a declaration must be regarded as · based wholly on the injury to the plaintiff's possession involved in a direct, momentary, unlawful entry upon the premises. Not merely the defendant's unlawful entry, but also its assumption and maintenance of possession, its eviction of the plaintiff thereby, and the subsequent continued exclusion of the plaintiff are complained of. For such an unlawful expulsion of the plaintiff from possession as tenant, followed by continued exclusion from such possession and resulting in consequential damage to the plaintiff, we see no reason to believe that an action on the case would not be a proper remedy; notwithstanding that on the same facts trespass q. c. f. might have been brought, or an action of contract upon the covenants in the lease. Instances are not wanting wherein such actions in tort for consequential damages, by tenant against landlord, and based upon unlawful eviction or exclusion during the term of the lease, have been sustained, without regard to the rules applying when the injury to be redressed is a mere momentary invasion of the plaintiff's possession and the action therefore strictly one of trespass q. c. f. See Ashley v. Warner, 11 Gray (Mass.) 43; Snow v. Pulitzer, 142 N. Y. 263, 36 N. E. 1059; Gildersleeve v. Overstoltz, 90 Mo. App. 518; Chapman v. Kirby, 49 Ill. 211; Allison v. Chandler, 11 Mich. 542.

A similar view of one count in the original declaration was suggested by this court upon the former writ of error in this case. Boston Elevated, etc., Co. v. Grace & Hyde Co., 112 Fed. 279, 285, 50 C. C. A. 239. The count there referred to was, in all respects material for the present purpose, substantially like the present amended declaration. The defendant objects to this view that the declaration does not allege any injury to the reversion or permanent damage to the property, but this is not a valid objection unless it be true that the facts alleged entitle the plaintiff to recover for a direct, momentary, unlawful entry only, and such damages only as it sustained by a momentary disturbance of its occupation. We find no controlling authority and no controlling reason in principle which obliges us to hold that unless it sues on the covenants in its lease, or first resorts to a real action for recovery of its possession, it is debarred from recovering indemnity for its loss of that right to use and occupy the premises during the remainder of the term, upon which it was entitled to rely. We find no conclusive reason why it may not treat the landlord's entry and subsequent occupation as having terminated the lease, and, if the termination was wrongful, obtain indemnity in an action of tort. We therefore overrule those exceptions which complain of refusals to instruct that the declaration stated no cause of action in case, that there could be no recovery in tort without proof of injury to the reversion, and that there was no evidence of such injury. As will appear, other ex-

ceptions to instructions given or refused upon the subject of damages must be, for similar reasons, disposed of in the same manner.

[2] 2. But, although we regard the plaintiff's action as above stated and not as contended by the defendant, proof of possession in the plaintiff on May 24, 1898, is none the less necessary for its support— as was said by the Circuit Court in the opinion above referred to of July 17, 1906, overruling the demurrer. The next inquiry is whether or not the defendant can complain of the ruling at the trial that the fact of such possession was established by the evidence.

The defendant proceeded, after its demurrer was overruled, to answer the amended declaration on August 10, 1906. This answer contained, besides a general denial, an express denial that the plaintiff was in possession on May 24, 1898. But it set up also, in its fifth paragraph, an affirmative defense, as follows:

That before the lease mentioned in the declaration the defendant was owner, seised in fee, and in possession of the premises.

That being so seised it made a lease of them to the plaintiff as tenant thereof.

That this lease was upon condition that the plaintiff should maintain during the term certain structures and an exhibition on the premises, continuous while the weather in each year permitted.

That the lease further provided that upon failure to maintain such continuous exhibition the lessor might enter while neglect to maintain it continued and repossess the premises as of its own estate.

That during the term the plaintiff failed to maintain such continuous exhibition.

That thereupon the defendant had the right while such default continued to enter immediately and so repossess itself of the premises without being guilty of trespass, and that such an entry would determine the plaintiff's lease.

And in the next (sixth) paragraph of the answer it was further set up that on May 24, 1898, the plaintiff and the person then having lawful possession of the premises requested and invited the defendant so to enter.

To a supplemental answer later filed, setting up another affirmative defense, and the plaintiff's replication thereto, no special reference is necessary for the present purpose. Upon the issues thus presented the case went to trial.

At the trial, as the present bill of exceptions sets forth, certain facts were admitted by the parties. It was admitted, among other things, that the defendant's entry upon the premises, a justification whereof was set up as above in its answer, was made on May 24, 1898, under circumstances appearing, as the exceptions state, "in detail below." Further on in the exceptions, uncontradicted evidence on the defendant's behalf is found, to the effect that its treasurer made this entry, under instructions from its president, and that in making it he declared that he "took possession under forfeiture of the lease;" also that, having thus entered, the defendant immediately sent the written notice to the plaintiff dated May 24, 1898, which is quoted in full in the former opinion of this court. 112 Fed. 280, 50 C. C. A. 239. This notice was

directed to the plaintiff alone, and expressly stated to it that the entry had been made in accordance with the provisions of the lease, for breach of the conditions thereof, and that by the entry the defendant had terminated the lease and the term thereof. The making of the lease referred to, dated January 1, 1896, a copy whereof is annexed to the declaration, was another fact admitted at the trial, as was also the making of the written agreement between the plaintiff and the Grace & Hyde Company, dated January 8, 1896, and being Exhibit 7, annexed to the exceptions.

At the trial, notwithstanding its entry and notice thus admitted, the defendant contended that the plaintiff's possession of the premises at the time of the entry had not been proved, or was, at least, a question for the jury. The court ruled, as matter of law, that the plaintiff was in possession at the time, and that by its entry the defendant terminated the plaintiff's lease. The defendant complains that this was error. It insists: (1) That there was no evidence that the plaintiff ever took or had possession under the lease; (2) that, on the contrary, the evidence showed the Grace & Hyde Company to have taken possession of the premises before February 1, 1896, when the term under the lease began, by virtue of its agreement with the plaintiff of January 8, 1896, showed the Grace & Hyde Company to have held continuous, exclusive possession thereafter until May 19, 1898, five days before the defendant's entry, and further showed one Wallace E. Hyde to have been in exclusive possession of them during this interval of five days and at the time of the entry.

These contentions are based upon further facts admitted, or upon evidence given at the trial, regarding transactions under the agreement of January 8, 1896, between the plaintiff and the Grace & Hyde Company, regarding controversies and litigation between them arising from those dealings, and regarding various steps taken therein by one or the other of them. The further admitted facts significant in this connection may be thus described:

(1) Provisions in the above agreement of January 8, 1896 (article 3) that the Grace & Hyde Company should "have the right to obtain and hold exclusive possession and control of * * * said leased premises," and of a structure called a "chute" to be built thereon by it, until the whole amount owing to it for building the chute, etc., as agreed should be fully paid.

(2) Sworn allegations by the plaintiff in a bill in equity, brought January 4, 1898, by it against the Grace & Hyde Company in an Illinois court, that said company had been fully paid for building the chute and ought to deliver it to the plaintiff; yet had not done so, but had delivered "possession of the Boston Chute" to persons unknown; also that said premises were neither in its possession nor in the possession of the Grace & Hyde Company, but had been turned over to persons unknown by the latter company.

(3) Sworn allegations by the plaintiff in an amended bill, filed in the same case May 5, 1898, that the Grace & Hyde Company still refused to "surrender possession of said chutes" to it; and, in a supplemental bill, filed on the same day, that the Grace & Hyde Company

211 F.—52

"retook possession of said Boston Chute" on or about March 1, 1898, from a tenant to whom it had leased them, had since "maintained and asserted exclusive possession and control thereof," and had "given out" that certain persons were the plaintiff's agents and managers; also that Wallace E. Hyde, one of said persons, had taken possession of the same, and that he and the Grace & Hyde Company had "held possession of said chute" since January 4, 1898.

(4) An order by the Illinois court May 9, 1898, not appearing to have been vacated or modified, appointing a receiver for two "chute properties" described in the bill, one of them the chute here in question, and directing that possession of them be surrendered to said receiver by the Grace & Hyde Company, Wallace E. Hyde, William Grace or their representatives.

(5) Allegations by the plaintiff in a bill in equity brought by it against the Grace & Hyde Company and others, in a Massachusetts court, May 28, 1898, four days after the defendant's entry, that the Grace & Hyde Company had leased the "Boston Chute and grounds" to persons unknown, and neglected and refused to give the plaintiff possession of said chute; that it had subsequently refused to deliver possession thereof to the Illinois receiver, but had put Hyde in possession thereof as its agent; and that Hyde, as such agent, had refused to deliver possession thereof; that the "Boston Chute" had been attached in a suit brought by Hyde against the plaintiff by a deputy sheriff, who held possession thereof and refused to deliver it to the receiver; also that the plaintiff and the receiver were excluded from said chute by the defendants named in the bill.

Of the evidence given at the trial and relied upon by the defendant in support of its above contentions, the significant features may be stated as follows:

Calkins, secretary and treasurer of the plaintiff company during May, 1898, and the person appointed as above by the Illinois court receiver of its property, called by the defendant, testified that the plaintiff company was not in actual physical possession of the premises during that month; that attempts made by him to get such possession during the month did not succeed; that at one such attempt, made by him on May 13, 1898, in company with N. P. Dodge, acting as counsel for the plaintiff, Wallace E. Hyde was found to be in possession of the premises and ordered them off; that Hyde was not then in the plaintiff's employ and did not represent it; that Hyde purported at the time to hold such possession, first, on behalf of the Grace & Hyde Company, then on his own behalf, claiming to have purchased the Grace & Hyde Company's interest.

N. P. Dodge, counsel for the plaintiff company in May, 1898, also called by the defendant, confirmed Calkins' testimony as to what happened at the premises May 13, 1898, and stated further that he had never succeeded in obtaining actual possession of the premises for the plaintiff company or for its receiver.

Silsby, a deputy sheriff, called by the defendant, testified that under a state court writ dated May 18, 1898, in an action of contract by Wallace E. Hyde against the plaintiff, he attached the chutes and all the

property inside the enclosure on the premises; that this attachment was taken off on May 26th and discharged; that he found Wallace E. Hyde there, and saw him there several times while the attachment continued, in actual charge and physical control of the premises.

There was testimony by William Grace, president of the Grace & Hyde Company, called by the plaintiff, that his company had, at the end of 1897, been repaid all that was due it for constructing the chutes under the agreement of January 8, 1896; that Wallace E. Hyde was its local manager in Boston and represented it in the operation of the chutes; that it directed Hyde by telegram, on May 19, 1898, to turn over the property known as the Boston Chute to the representative of the receiver appointed in Illinois; that after that date it had no representative in Boston and carried on no business at the Boston Chute.

It appeared that Wallace E. Hyde alleged under oath, in a bill of equity filed in the superior court by him against the plaintiff, on May 23, 1898, that he was in possession of the premises, claiming to hold them under the terms of the defendant's lease to the plaintiff and by reason of his ownership in the chute and its appurtenances; and also alleged himself to be equitable owner of them, maintaining possession against the Illinois receiver, except so far as the sheriff held possession under the above writ of attachment.

We are unable to find in the facts or evidence thus relied upon sufficient reason for holding that the ruling now under consideration was wrong.

It stood admitted at the trial, as it did not upon the pleadings, that the defendant had leased the premises to the plaintiff, and had done this by the lease which the declaration set forth—a lease providing, among other things, that there should be no assignment or subletting without the defendant's consent.

Whatever the effect of the plaintiff's agreement with the Grace & Hyde Company, as between the parties to it, it is clear, as this court has once held (112 Fed. 285, 286, 50 C. C. A. 239), that it neither created nor contemplated a subtenancy, and negatived the conveyance by the plaintiff of any immediate interest in the leasehold; so that whatever the Grace & Hyde Company did under it on the premises must be regarded, as against strangers to that agreement, as done for the plaintiff, and its occupation or "possession" of the premises as, in legal effect, that of a manager or agent for the plaintiff. Nor is this any the less true because the terms of the agreement were that the Grace & Hyde Company should have "exclusive" possession. Whatever the terms used in the agreement to describe it, the right which that company took by agreement could have been nothing more than a right to require the plaintiff to keep a promise that it would not interfere nor permit interference with the company's exclusive control and management of the chutes, while the company's occupation under the plaintiff continued. Such a right presupposed possession in the plaintiff as tenant. We find nothing, therefore, in any of the allegations or admissions made or testimony given for the purposes of the controversy between the parties to the agreement regarding their rights under it, which would have justified a finding that the plaintiff was out of possession, in the sense required for the purposes of this case.

There was nothing in the evidence indicating that any one had ever been, for any purpose, substituted for the plaintiff as the defendant's tenant under the lease, or as the person liable to the defendant either for the monthly rent reserved, or for the performance of the tenant's other covenants under the lease.

No change whatever in this state of affairs from the time of making the lease on January 1, 1896, to the defendant's entry on May 24, 1898, could be inferred from the evidence. The defendant's supplementary brief expressly disclaims the contention that the lease had ever been abandoned.

[3] It stood admitted at the trial, as it had not on the pleadings, that the defendant did in fact assume on May 24, 1898, to enter for the sole purpose of terminating the lease by its entry, and, as part of the steps it took to effect such termination, to notify the plaintiff that it had made the entry, and had made it for breach of conditions to be performed by the plaintiff. And the defendant stood committed by its answer, to the claim that the only breach of these conditions relied on to justify the entry consisted in the fact that the plaintiff had failed to maintain the continuous exhibition which the lease required. The defendant's entry having been, by its own admission, made, and made for the sole purpose of taking advantage of something which the plaintiff had failed to do, and of something which it could only have done if it had possession of the premises, we think it cannot now expect us to hold the trial court in error for refusing to permit it, at the same time, to ask the jury for a finding that the plaintiff then had no possession of the premises at all, and could not, therefore, have committed the very breach of condition of which the defendant assumed to take advantage by its entry. At the trial, however it might have been on the pleadings, the two positions were inconsistent, and it was for the court to say upon which the defendant should go to the jury.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration." Railway Co. v. McCarthy, 96 U. S. 258, 267 (24 L. Ed. 693).

3. Whether or not there had been a breach of the conditions referred to, justifying the defendant's entry, was submitted to the jury. The defendant complains of refusals to direct a verdict for it upon this issue, or to rule either that Hyde was authorized to admit persons to the premises, or that, if he was in possession and control of them as the plaintiff's agent at the time of the entry, the defendant could not be liable for an entry made at his invitation and request. We cannot find anything in the evidence which would have warranted a finding either that the Grace & Hyde Company was ever capable of authorizing Hyde to surrender the plaintiff's possession as tenant under the lease to the landlord, or that Hyde had any authority regarding the premises beyond that which the Grace & Hyde Company could give him, or that the plaintiff ever authorized Hyde either expressly or by implication, so to surrender its possession. If none of these things could have been found, it could make no difference whether or not he had authority to "admit persons" upon the premises, nor could any invitation by him to

the defendant to enter because of a breach of the conditions, or any admission by him that there had been such a breach, have bound or estopped the plaintiff.

[4] Henry Wheeler, called by the defendant, a member of the Boston bar, who had acted for the plaintiff in its above controversy with the Grace & Hyde Company, produced from the letter book of his firm a copy of a letter dated May 20, 1898, which, according to his testimony, formed part of his correspondence with Chicago counsel for the plaintiff, about the then pending litigation. It contained statements tending to show the weather at or before the date of the letter to have been such that the exhibition which the plaintiff was to maintain should have been open May 15, 1898. The copy offered by the defendant was excluded. Of its exclusion, the defendant clearly has no right to complain. Not only was there no express proof of the sending or receipt of the letter itself, but it was, at most, a statement of the witness' opinion, communicated between counsel acting on the same side of a pending suit. The witness was allowed to use the copy to refresh his recollection in testifying. The defendant cannot say it was in any way prejudiced by the ruling that the copy was not by itself admissible.

4. The measure of damages, as the court ruled at the trial, was to be the value to the plaintiff of the unexpired term of the lease, which, on May 24, 1898, had until February 1, 1901, to run. Of this instruction, we think, for the reasons stated, that the defendant has no right to complain. It is clear from what has been said that we consider the court to have been right in refusing to rule that nominal damages only could be recovered.

[5] Four witnesses were allowed, against objection, to give their opinions of the value of the lease for the above unexpired period. The objection was that they were not sufficiently qualified as to the values of Boston real estate. None of them lived in Boston, all were of Chicago, and their qualifying experience appears to have been rather in building chutes and conducting them as places of public amusement, than as dealers in real estate, whether in Chicago or elsewhere. But while these premises had been held by the plaintiff as tenant under the lease, they had been fitted up, at much expense to it, with chutes and their appurtenances; and their fair value to whoever might be entitled to use them for the remainder of the term might well have depended much on the fact that they were so equipped for the special and peculiar use thus contemplated, as one of the elements entering into that value. Upon the qualification of witnesses offered as experts, the trial court is entitled to pass in its discretion. In admitting the opinions of the witnesses referred to, we cannot say that the limits of that discretion were exceeded. The jury were instructed that the value of the premises for use as a place of amusement was only one of several alleged elements of value, all of which were to be considered.

Evidence was admitted, against objection, to show the value of the structure on the property, the amount expended in permanent improvements during 1897, and the desirability of the situation for amusement purposes. All these matters we think the jury were rightly allowed to take into account, in determining the fair value of the leasehold interest in question, as possible elements of that value.

[6] Testimony was admitted, against objection, tending to show the receipts, expenses and net profits of the business conducted on the premises, after they had been fitted up as above, during the period of their operation in 1896 and 1897 by the Grace & Hyde Company as a place of public amusement. The defendant's objection is that the profits of such a business are highly speculative and conjectural, and that they have no necessary or probable connection with the value of a leasehold interest of the premises whereon the business is conducted. Of course the amount of such previous net profits could not of itself be allowed to determine the value of such an interest, but in view of the fact that the business was that for which the premises had been expressly adapted, for which they stood ready when the plaintiff was deprived of them, and for which they had been used in previous seasons, we are unable to say that the court was wrong in permitting the jury to consider them as an additional element entering into the estimate to be made. We can hardly doubt that intending lessors or lessees would so consider them in dealings contemplating an agreement involving the same question of value. The jury were carefully instructed in regard to the various contingencies which might affect a business such as that from which these profits resulted, and were cautioned to make due allowance therefor. Under the instructions they cannot have supposed themselves authorized to compensate the plaintiff for any loss of net profits as such. See Allis Co. v. Columbia, etc., Co., 65 Fed. 52, 57, 58, 12 C. C. A. 511; Dexter v. Manley, 4 Cush. (Mass.) 14, 27.

We find no error, therefore, in the instructions given upon the question of damages.

5. There are two assignments of error which go to the plaintiff's capacity to maintain the suit.

(1) The last piece of evidence offered by the defendant at the trial was a certificate by the Illinois Secretary of State that a paper annexed was a true copy of an order made by him July 1, 1903, in pursuance of an Illinois statute recited, purporting to declare the plaintiff's charter canceled for its failure to make an annual report due in February, 1903, and pay the required fee of $1 thereon. The court excluded this, on the ground that it could not affect the maintenance or prosecution of the suit, and for other reasons not specified. In view of the Illinois statute referred to, and of People v. Rose, 207 Ill. 352, 69 N. E. 762, we cannot agree with the defendant that the certificate was of itself proof that the plaintiff had no corporate existence. The defendant offered nothing beyond it; and we think also, although the pleadings raised the issue, that the court might well have refused, in its discretion, to permit the question to be raised before the jury in the manner attempted, for the first time, when the end of so long a trial had been so nearly reached.

[7] (2) The defendant's supplemental answer alleged the appointment, on August 9, 1899, some months after this suit had been begun, by an Illinois court of competent jurisdiction, of a receiver to take possession of all the plaintiff's property and rights of action, also the due qualification of the receiver. It also alleged that the plaintiff was without right to prosecute the suit, that such right was vested in the

receiver, and that he could not prosecute without leave of the court. The alleged appointment was admitted by a replication which alleged that the Illinois receiver had obtained auxiliary appointment as receiver of the plaintiff's assets in Massachusetts, was duly authorized to prosecute and had authorized its prosecution by the plaintiff's attorney of record. The defendant does not appear to have controverted what the replication alleged, but it asked a ruling that "Mr. Wheelock, as receiver, cannot prosecute or maintain this action." This was refused. We cannot hold the refusal prejudicial error. The suit did not abate by the appointment of a receiver for the plaintiff's rights of action while it was pending. The receiver had not asked to intervene, nor had the defendant moved to have him substituted as plaintiff. The question of his right to maintain the action, as receiver, in the jurisdiction of a court other than that of his appointment did not arise. See Missouri, etc., Co. v. Bank, 77 Fed. 117, 122, 23 C. C. A. 65.

We find no other assignments of error requiring to be specifically dealt with. All are in effect disposed of by the conclusions stated above.

The judgment of the District Court is affirmed, with interest, and the costs of the appeal.

## On Petition for Rehearing.

PER CURIAM. The evidence at the trial failed, in our opinion, to show that the plaintiff had ever lost its possession as tenant under the leases. The justification attempted by the defendant of its entry to terminate the lease was based upon an alleged neglect and omission on the plaintiff's part to keep its agreement in the lease that "its exhibition" should be "continuous while the weather of each year permits." The defendant relied for that purpose upon evidence that no exhibition was maintained during part of 1898 while the weather did permit, and upon a claim that it was entitled to rely upon statements to that effect of Wallace E. Hyde, as "manager" of the exhibition. No claim appears to have been made at the trial that the entry was justifiable because, for want of possession in the plaintiff, no exhibition maintained, whatever the weather, could have been its exhibition.

But the defendant is in error in assuming that what is said in our opinion as to the inconsistency of its contentions was the controlling reason for overruling its exception to the ruling of the trial judge upon the question of possession. Even if we should accept the contention that there is no such inconsistency, this would not affect our opinion that the plaintiff entered into possession under the lease, and that there could be inferred from the evidence offered by the defendant no substantial change of affairs in this respect from the time of making the lease to the defendant's entry on May 24, 1898.

The defendant cannot now say that the excluded certificate from the Illinois Secretary of State might have been followed and supplemented by further evidence tending to disprove the plaintiff's corporate existence, in view of the fact that the record shows no offer of any such evidence at the time, and no suggestion of a desire to offer any.

The petition for rehearing is therefore denied.