FELLOWS et al. v. FREUDENTHAL.

(Circuit Court of Appeals, Seventh Circuit. June 23, 1900.)

No. 661.

1. BANKRUPTCY—DISCHARGE OF BANKRUPT—OBJECTIONS BY CREDITOR—MAKING FALSE OATH.

Where the offense, under Bankr. Act 1898, § 29b, of "having knowingly and fraudulently made a false oath" in the affidavit to a petition for discharge, and accompanying the schedule of assets, by omitting property held in the wife's name, is made a ground of objection to the discharge of a bankrupt, the proof must establish ownership in fact by the bankrupt of the property in question, and clear knowledge of such fact on his part.

2. SAME—EVIDENCE.

Evidence that a bankrupt omitted from his schedule of assets certain shares of stock held by his wife in her own name, and which were purchased by her with money borrowed from her mother and brother-in-law after her husband had failed in business, and that the husband was employed as manager of the business of the corporation, is not sufficient to establish the offense, under Bankr. Act 1898, § 29b, of "having knowingly and fraudulently made a false oath" in bankruptcy proceedings.

3. SAME—AVOIDING PRIOR FRAUDULENT CONVEYANCE—JURISDICTION.

Whether shares of stock purchased with money borrowed upon the joint note of the husband and wife, and issued to the latter, can be impounded for the benefit of the husband's estate in bankruptcy, can be determined only in a direct proceeding between the proper parties, and not collaterally on the statutory hearing for the discharge of the bankrupt, which cannot involve the rights of the wife.

4. SAME—STATUTE NOT GIVEN RETROACTIVE EFFECT.

Bankr. Act 1898, §§ 14b, 29b, making the offense of knowingly and fraudulently making a false oath by the bankrupt in the bankruptcy proceedings, in respect to his property, a ground for denying him a discharge, do not extend to previous conduct or transactions which are merely fraudulent as to creditors, and not made criminal.

5. SAME—REFERENCE.

Since, under Bankr. Act, § 2, the district courts are invested with jurisdiction both at law and in equity, to "enable them to exercise original jurisdiction in bankruptcy proceedings," they have the power to order a reference of an issue made by creditors on a bankrupt's petition for discharge.

6. SAME—REFERENCE—COSTS.

Where objections made by creditors to a bankrupt's application for discharge are assigned by the district court to the referee in bankruptcy for hearing, the referee is entitled to a reasonable fee for the services so performed, in addition to the fees allowed him under the bankruptcy law.

Appeal from the District Court of the United States for the Northern Division of the Northern District of Illinois.

This appeal is from an order of the district court, sitting in bankruptcy, in the matter of Frankenthal, Adler, and Freudenthal, bankrupts, entered on final hearing of the application of Joseph Freudenthal, one of the bankrupts, for a discharge, upon objections interposed by J. F. Fellows, J. C. Archibald, W. H. Fellows, and George L. Hastings, appellants, as creditors of such bank-

rupt. The testimony was heard by the referee, under an order of reference, and was submitted to the court with the findings of the referee and exceptions thereto. The order overrules the exceptions, in effect overrules the objections, grants the discharge, and requires that the appellants, as objecting creditors, pay the costs of the hearing, including the costs of the referee thereupon, taxed at $25. The grounds of objection to the discharge, although specified in various forms, relate to an alleged interest in certain shares of stock omitted from the schedules filed by the bankrupt, and it is alleged that he "knowingly and fraudulently" made a false oath and a false account in the proceedings by such omission. The witnesses called in support of the objections were Joseph Freudenthal, the bankrupt, and Leo Fax, and their testimony shows that the shares of stock in question are 71 shares, of $100 each, of the capital stock of the Central House-Furnishing Company (an Illinois corporation, organized in November, 1895), which are held in the name of Jennie Freudenthal, the wife of the bankrupt; that for 59 of these shares Mrs. Freudenthal subscribed on the books of the company at the organization, personally paid the face amount in cash, and the shares were thereupon issued to her, and have ever since been held by her, and in her name; that she subsequently at various times took and paid for other shares, to the amount of 12, all constantly held in her name. The authorized capital stock of the corporation was 100 shares, of which 88 shares have been paid in and issued, and the remaining 12 shares are held as so-called treasury stock, carried on the books of the company in the name of Samuel Freudenthal, who appears as an original subscriber for such purpose. Albert Neuberger holds 16 shares of the issued stock, and the bankrupt holds 1 share, which he schedules. Aside from their relation as husband and wife, no interest of the bankrupt is shown at any time in the shares held by Mrs. Freudenthal, unless it appears in one or both of the circumstances found by the referee in conformity with the undisputed testimony, relating (1) to the derivation of the means invested by Mrs. Freudenthal in this stock; and (2) to the participation of the bankrupt in the operations of the company. (1) In 1894 Mrs. Freudenthal borrowed from her mother, Lena Liebenstein, $3,000, and from her brother-in-law, Leo Fax, $2,500, which money she invested in the stock of a corporation called the Freudenthal Manufacturing Company; owning all the stock, except 1 share held by the bankrupt. Fax acted as the representative of Mrs. Liebenstein in arranging that loan, and in both instances paid the money to Mrs. Freudenthal; notes being taken, which were signed by her and by her husband as well. But Fax testifies that the husband had no other part or share in the transaction, was not given credit nor considered to be worthy of credit, and his name was taken upon the note for the reason alone that it was supposed to be "necessary, in loaning money to a married woman, to have her husband join in the papers." It further appears that the bankrupt failed in 1893, had no property, and was not engaged in business when this loan was effected. Subsequently the business of this corporation was wound up, and Mrs. Freudenthal obtained repayment of a portion of her investment in its stock, and the proceeds thus received were applied by her in payment of the 59 shares in the Central House-Furnishing Company, upon her original subscription. Whether the 12 shares afterwards taken by her were paid out of the proceeds of the business or otherwise is not definitely stated. The notes to Mrs. Liebenstein and Fax are outstanding and unpaid, but Mrs. Freudenthal has paid the interest, and both parties consented to her reinvestment in the stock of the new company. (2) The business of the Central House-Furnishing Company is that of "buying and selling goods upon the installment plan." It was managed by the bankrupt, as president, and Neuberger, as secretary,—the latter being the only member having previous experience in its line,—and was profitable. The bankrupt received a salary,—$35 per week at one time, and later increased to $40,—and had no other share in the business, except his 1 share of stock, which was paid by his wife. No dividends were formally declared at any time, but amounts were drawn out from time to time out of earnings by Mrs. Freudenthal and by Neuberger, and charged, respectively, upon the books of the company; and money so drawn by Mrs. Freudenthal "was largely used by her in contributing to the support of their family." The bankrupt filed with his petition a schedule of his property, which shows only wearing apparel, watch and chain, jewelry, and 1 share of stock in this

corporation, of a total valuation of $260, and an affidavit by which he declares the "schedule to be a statement of all his estate, both real and personal, in accordance with the act of congress relating to bankruptcy"; and the petition is likewise verified in the usual form.

Frank White, for appellants.

Horace Kent Tenney, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after making the foregoing statement, delivered the opinion of the court.

The facts upon which the objections to the discharge of the bankrupt rest are undisputed, and two questions only are presented by the assignment of errors: (1) Whether the conceded facts clearly sustain the objections; and, if not, (2) whether costs were properly charged as taxed against the objecting creditors.

1. The bankruptcy act is imperative in granting to the bankrupt the right to a discharge "unless he has (1) committed an offense punishable by imprisonment as herein provided; or (2) with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition might be ascertained." Section 14b. The objections in the case at bar are confined to the first-mentioned cause, and specify as the offense committed by the bankrupt that he "knowingly and fraudulently" made (1) "a false oath in relation to this proceeding in bankruptcy," and (2) a false account in the same matter; but the testimony relates solely to the charge of making a false oath, and the only contention is that the affidavits of the bankrupt to his petition and accompanying schedule of property are false because he omits from the schedule a showing of ownership by himself of the shares of stock in the Central House-Furnishing Company which are held in the name of his wife. The serious offense thus charged is one of the crimes punishable by imprisonment under the bankrupt act, and its ingredients are clearly defined in section 29b as "having knowingly and fraudulently * * * made a false oath" in the proceedings. This language is followed in stating the ground of objection, and it is obvious that no ground exists, within the statute, unless the proof establishes both ingredients of the offense,—ownership in fact by the bankrupt of the shares in question, and clear knowledge of such fact on his part, either directly shown or necessarily implied from the circumstances. In the case at bar the proof establishes neither of these requisites. Legal title to the shares of stock was vested in the wife, through her original subscription and subsequent purchases, directly from the company, and has so remained ever since, without apparent ownership in the bankrupt in any form. It is contended, however, that these transactions in the name of the wife were mere devices to cover up and place beyond the reach of creditors property acquired by the bankrupt, and held in fact for his use and benefit; and, if the testimony establishes this proposition of fact, decisions of the supreme court of Illinois are cited as to the status of the legal title in such

case which would tend to complicate the issue upon the one question of ownership in fact, with this possible result: that the issue whether an offense was committed would then be left to depend upon the mere presumption of knowledge by the bankrupt of the effect in law of the transaction,—upon a mere legal fiction,—in lieu of evidence to establish knowledge in fact. But neither of the problems thus suggested requires solution here, for the reason that the testimony fails to support the appellants' contention that the title of the wife in the shares of stock held by her conclusively appears to be so held as a mere cover and fraudulent device for actual ownership by the bankrupt. Indeed, the testimony discloses no ground for impeachment of the transaction as a fraud upon creditors, unless it be because of their relation as husband and wife, supplemented by the fact that the husband was employed by, and shared in the management of, the corporation, and the possible inference that 12 of the 71 shares obtained by the wife were paid for out of her share of the corporate profits. Whether sufficient ground exists, either in these circumstances or otherwise, to impound for the benefit of the estate any of the shares so held, can be determined only in a direct proceeding between the proper parties, and not collaterally on the statutory hearing for discharge, which cannot involve the rights of the wife, and where the single question presented by the objections is, has the bankrupt knowingly made a false oath in the omission to schedule as his individual property shares of stock which are issued to and claimed by his wife? As the act limits the grounds of objection, so far as applicable here, to the commission of a criminal offense within section 29b, it is plain that the issue cannot extend to prior conduct or transactions merely fraudulent as to creditors, and not made criminal. Such is the construction of these provisions uniformly adopted by the district judges, so far as their opinions appear reported, and it is approved as applicable to the order overruling the objections under consideration.

2. In reference to the remaining assignment of error, the award of taxable costs against the objecting creditors was authorized by subdivision 18 of section 2 of the bankruptcy act, and the allowance of $25 as costs of the referee on the hearing is the only debatable question. Section 40 of the act expressly provides that "referees shall receive as full compensation for their services, payable after they are rendered, a fee of ten dollars deposited with the clerk at the time the petition is filed in each case," together with a small percentage on payments out of the estate. This provision is in harmony with the purpose manifested throughout the act, to so limit all allowances as to secure economical administration of proceedings and estates in bankruptcy; and the duty of the courts to construe and administer the act in conformity with that purpose is well declared and exemplified in the opinion of Jenkins, Circuit Judge, speaking for this court, in the recent case of In re Curtis, 100 Fed. 784. If the charge in question is for services rendered by the referee in the performance of the duties of a referee under the act, it is plainly not taxable as costs in this instance; for, however inadequate the prescribed compensation may be, he takes the office cum onere, and must abide by the fees so fixed. In sections 38 and 39 the jurisdiction and duties of referees are spe-

cifically enumerated, but the matter of hearing applications for a discharge is not included, either in direct terms or inferentially, while subdivision 4 of section 38 clearly excepts such hearings from his jurisdiction. Moreover, section 14b expressly provides that "the judge shall hear the applications for a discharge, and such proofs and pleas as may be made in opposition thereto." As the district courts are invested with jurisdiction both at law and in equity, to "enable them to exercise original jurisdiction in bankruptcy proceedings" (section 2), the power unquestionably exists to order a reference for the purpose of the hearing pursuant to the equity practice; and it would be practically impossible to conduct the hearings otherwise in districts like the Northern district of Illinois, with the press of other business, and cases in bankruptcy under the present act numbering in the thousands. The reference is then made to the referee in the capacity of special master, not as referee in bankruptcy, and for a duty independent of the latter office, and in no sense incompatible. To avoid confusion, it would seem better practice to designate the appointee as special master for the purpose in the order, but the fact that the name of "referee" or "referee in bankruptcy" is retained instead cannot affect his performance of the duties. His report is advisory, only, and the final hearing is before the district judge. For the necessary service so performed under the order of reference, the appointee is entitled to a reasonable allowance, unaffected by the fact that he held as well the office of referee in bankruptcy, and was probably chosen for that reason. The spirit of the act should be observed, as we have indicated, in making the allowance; and, from the testimony shown in this record, the amount so taxed appears to be reasonable, in that view. The order of the district court is accordingly affirmed.