In re LANGFORD, FELTS & MYERS.   In re HANSLEY & ADAMS.
In re COHN.

(District Court, S. D. California, S. D.   June 16, 1915.)

BANKRUPTCY ⟂481—COMPENSATION OF REFEREE—APPOINTMENT AS SPECIAL MASTER.

   Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, and especially in view of the provision of section 72, added by Act Feb. 5, 1903, c. 487, § 18, 32 Stat. 800 (Comp. St. 1913, § 9656), that a referee shall not "in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed by this act," the court has no power to allow a referee additional compensation for the doing of anything which it is expressly by the act or by the general orders made his duty to do, or which it is by such act or general orders made permissible with the judge to refer to him for hearing and report; but the court may under its general powers refer matters not within the scope of such express or permissive provisions, although arising in a bankruptcy proceeding, to a referee or another as a special master, and may allow the usual compensation of special masters for his services therein.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 886; Dec. Dig. ⟂481.]

In Bankruptcy. In the matters of Langford, Felts & Myers, a corporation, of Hansley & Adams, and of Samuel B. Cohn, bankrupts. On motions to fix fee of referee for services as special master.

Carlos S. Hardy and Rex G. Hardy, both of Los Angeles, Cal., for petitioning creditors In re Langford, Felts & Myers.

Sanson, Cass & Shelton, of Los Angeles, Cal., for bankrupts Hansley & Adams.

Harry C. Levey, for bankrupt Cohn.

BLEDSOE, District Judge. Motions have been made in each of the above-entitled proceedings to fix and assess the special master's fee of Mr. Lynn Helm, referee in bankruptcy of this court, alleged to be due because of his acting as special master in the matters in bankruptcy theretofore referred to him. Because of the fact that the question has been raised in these three proceedings as to the right and authority of this court to assess and fix special master's fees in bankruptcy proceedings, I will, for purposes of convenience and a saving of time, consider them all herein.

In the case first above entitled, a petition in involuntary bankruptcy was filed against the corporation, and, no opposition appearing, an order of adjudication, followed by the appropriate order of reference, was made by the judge. Thereafter there was presented to the District Court (Judge Wellborn presiding) by certain creditors a petition or motion to set aside and vacate the order of adjudication theretofore made, on the ground of alleged fraud in the matter of the presentation of the original involuntary petition. In due course this motion came on for hearing, whereupon, as appears from the minutes, the following order was entered:

"* * * And it appearing to the court that this matter has been improperly presented to the judge of this court, now, pursuant to General Order in Bankruptcy No. 12, it is presented to Lynn Helm, Esquire, the referee in bankruptcy herein, to whom this matter was heretofore generally referred."

Thereupon the matter was heard and considered by the referee, much evidence was taken, and a report incorporating findings and conclusions was prepared and filed by Mr. Helm as "referee in bankruptcy," and in which the referee made the recommendation that "judgment be entered" denying the motion to vacate, etc. Thereafter appropriate proceedings were had as for a "review" of "findings of fact and conclusions of law" of the referee. Upon this review coming on for hearing before this court, the report was confirmed and the motion to vacate was thereupon denied. Thereupon a "report of the referee" was filed and presented to the court, setting up the fact hereinbefore referred to, and specifying with some particularity the labors performed by the referee, and concluding with the following statement:

"Inasmuch as the matters involved in the petition of J. D. Langford and G. W. Felts were not matters which would come before me in the ordinary administration of said bankruptcy proceeding as referee, but pertained to matters with reference to the adjudication, I am of the opinion that an allowance should be made to me for hearing said matter as a special master, and if it is proper that such an allowance should be made I ask that the court fix a reasonable fee, to be taxed as costs, against the petitioners for said master's fee.

"Of course, if it was within my duty as referee in charge of said proceedings to hear said matter, I do not ask for any allowance, and no allowance should under any circumstances be made. If there is any doubt about the matter, it should be resolved against me; but the matter is submitted to the judge of this court for such order as to him shall seem meet."

In the Hansley & Adams Case it appears that, upon a petition in voluntary bankruptcy being filed by one of the members of a part-

nership, opposition thereto, together with a denial of bankruptcy, was filed by another partner. Thereupon the issues thus raised were, pursuant to the stipulation of the parties, referred to Mr. Helm as "special master" to hear and report his findings and conclusions. Thereupon such a hearing was had, and upon the findings thereof, after a subsequent re-reference, an order of adjudication was finally made by the court.

In the matter of Samuel B. Cohn, the referee in his report recites the fact of an order having been made in the proceeding referring to him as "special master," a petition for discharge, together with the opposition thereto.

The regular fees as for "full compensation for their services" for the referees are fixed by the Bankruptcy Act itself. Section 40 (Comp. St. 1913, § 9624). In 1903, because, apparently, of the low fees theretofore obtaining, and also because of many abuses by way of special references and otherwise which had crept into the administration of the Bankruptcy Law in an effort to provide additional compensation, it was provided by an entirely new section in the Bankruptcy Law (section 72) that:

"Neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this act."

The language of this section is unambiguous and very emphatic. From its terms it is obvious that Congress intended that a referee should, without receipt or expectation of compensation in addition to that provided by the act, perform all the services that might be required of him by the terms of the act. It should be noted also, in passing, that this important amendment was ingrafted upon the Bankruptcy Law after the Supreme Court of the United States had made and promulgated their general orders hereinafter referred to. It thus becomes necessary to consider what duties or services are impressed upon referees by the act, the full burden of which, it must be assumed, each referee in accepting his trust agreed to perform without other compensation than that prescribed in the act itself.

By section 38 of the act (section 9622) referees are invested with jurisdiction to do and perform certain things, and among others:

(4) "Perform such part of the duties, except as to questions arising out of the applications of bankrupts for compositions or discharges, as are by this act conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts, except as herein otherwise provided."

By section 39 certain specific duties are enjoined upon referees; none of them, however, are germane to the inquiries herein.

By section 18 (9602), subdivision "d," of the act it is provided that upon the filing of a petition for involuntary bankruptcy:

"If the bankrupt, or any of his creditors, shall appear, within the time limited, and controvert the facts alleged in the petition, the *judge* shall determine, as soon as may be, the issues presented by the pleadings, * * * and make the adjudication or dismiss the petition."

By subdivision "e" it is provided that:

"If on the last day within which pleadings may be filed, none are filed by the bankrupt or any of his creditors, the *judge* shall on the next day, if present, or as soon thereafter as practicable, make the adjudication or dismiss the petition."

By subdivisions "f" and "g" of said section 18 it is provided that if the judge is absent from the district, and if no opposition has been filed by the bankrupt or any of his creditors, or in the case of a filing of a voluntary petition and in the absence of a judge, the clerk shall forthwith refer the case to the referee, upon whom, therefore, in consequence of the provisions of clause 1 of subdivision "a" of section 38 of the act, is cast the duty of considering the same and making the adjudication or dismissing the petition.

Section 30 of the act (section 9614) ordains that:

"All necessary rules, forms, and orders, as to procedure and for carrying this act into force and effect shall be prescribed, * * * by the Supreme Court of the United States."

By General Order No. 12 (89 Fed. vii, 32 C. C. A. vii), promulgated by that court in November, 1898, and effective from and after January, 1899, pursuant to the authority conferred by section 30, it was provided that after the order of reference by the judge to the referee:

"All the proceedings, except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee."

It was, however, provided in the same General Order that:

"Applications for a discharge, or for the approval of a composition, or for an injunction to stay proceedings of a court or officer of the United States, or of a state, shall be held and decided by the judge. But he may refer such an application, or any specified issue arising thereon, to the referee to ascertain and report the facts."

By General Order No. 35 (98 Fed. xiii, 32 C. C. A. xiii), promulgated at the same time, it was provided in paragraph 2 thereof that:

"The compensation of referees, prescribed by the act, shall be in full compensation for all services performed by them under the act, *or under these General Orders,* but shall not include expenses necessarily incurred," etc.

These General Orders of the Supreme Court, being expressly provided for in the act, "have the force and effect of law" (In re Gerber, 186 Fed. 693, 108 C. C. A. 511), at least in so far as they are not in conflict with express provisions of the act.

Upon a consideration of the above-mentioned provisions of the Bankruptcy Act and of the orders of the Supreme Court promulgated in furtherance thereof, it would seem as if the court had no power to allow fees or compensation for a referee, "in any form or guise," in addition to that expressly provided by the act, for the doing of anything which it is expressly, by the act or by the General Orders, made the duty of the referee to do, or which it is by such act or General Orders made permissive with the judge to refer to the referee for hearing and report. In other words, taken together, the act and the General Orders provide what a referee shall do or may be called upon to do in a bankruptcy proceeding referred to him. For the doing of

any or all of these things he is to receive certain fees fixed by the act, and for the doing of such things he cannot, directly or indirectly, "in any form or guise," be the recipient of additional compensation.

Congress enacted section 72 of the act *after* the Supreme Court had promulgated its general orders as hereinabove referred to, and it must be assumed that Congress at that time fully understood and appreciated, not only the duties which had been cast upon the referee in virtue of the provisions of the General Orders, but also the jurisdiction and authority of the judge under those orders to refer to the referees matters not included within their specific duties as laid down in the act; and it must be assumed, also, that Congress at the same time thoroughly appreciated the fact that the Supreme Court, in the selfsame orders, had provided that the compensation of the referees as prescribed by the act should be in full "for all services performed," either under the act or under the General Orders. In this view of the case, in my judgment, the performance by the referee of the ordinary services following a general reference, or of services following a special reference having to do with any of the matters which the Supreme Court have said *may be referred* to the referee by the judge (General Order No. 12, *supra*), authorizes the referee to receive only the compensation specially provided in the statute. As said, in Re Halbert, 134 Fed. 236, 67 C. C. A. 18, the language of section 72 "is so precise, so unambiguous, and so explicit as to preclude the allowance of additional compensation upon any theory of a dual personality." The performance of other services, not included within the above category, if referred to the referee, or to any other person, *as a special master*, pursuant to the general power of the court to call to its aid the services of a special master, would justify the allowance of special fees as compensation therefor.

In this connection I will suggest that I conceive it to be not improper, and the court will not hesitate, in cases where the business of the court demands it, to refer to a referee matters in bankruptcy not specially cognizable by him under the terms of a general reference. If, under the act or the General Orders provision is found for a permissive reference of such matters to the referee, no additional compensation will be allowed him. He will be considered as having accepted the office cum onere. If, however, as to such special matters no authority or permission is found in the law for their reference to the referee as such, they will be referred to him, or to any other person specially qualified, as the circumstances may require, *as special master*, and the usual compensation allowed to special masters will be awarded.

Cases can be found, doubtless, which go counter to these views. It seems to have been the practice of some jurisdictions, because of the small fees allowed the referees, to make references of the character involved in the proceedings herein to the referees as special masters, and allow additional compensation therefor. Under the controlling terms of section 72, however, and considering the time of its enactment with reference to the promulgation of the General Orders as hereinbefore pointed out, I cannot believe that the court possesses such a power otherwise than as indicated hereinbefore. My views

herein find support in the following cases: In re Wilcox (D. C.) 156 Fed. 685; In re Troth (D. C.) 104 Fed. 291; and In re Sweeney, 168 Fed. 612, 94 C. C. A. 90. The cases of In re Grossman (D. C.) 111 Fed. 507, and Fellows v. Freudenthal, 102 Fed. 731, 42 C. C. A. 607, called to my attention in behalf of the referee herein, were decided prior to the enactment of section 72 in 1903, and consequently are not applicable under the terms of that section.

In the matter of Langford Felts & Myers, it being a petition to vacate an order of adjudication, the proceedings should, of course, have been presented to the judge, because the referee would have no authority or jurisdiction to vacate an order made by the judge. Were it otherwise, the authority would be invested in the inferior to stay the judgment and vacate the orders of his superior. It follows, therefore, that the order made by Judge Wellborn hereinabove set out, to the effect that the petition to vacate the order of adjudication had been "improperly" presented to him, must have been an inadvertence. This petition, however, was referred to the referee *as such* and his report was rendered as "referee in bankruptcy," and not as special master. For this reason I am constrained to hold that he is not entitled to any special fee as for the consideration of, or rendition of his report upon, the matter submitted to him in connection with the petition to vacate the order of adjudication. Under the language of the reference, Judge Wellborn evidently did not consider that he was to receive any special compensation for the services to be performed.

In the Hansley & Adams Case the matter was submitted to the referee *as special master,* and was not a matter which could by the court have been referred to the referee under the act or under the General Orders. It had reference entirely to a petition in voluntary bankruptcy, the determination of which was committed solely to the judge. In this instance, therefore, without question, the referee as special master is entitled to a special allowance, and the same will be accorded to him as prayed for.

In the matter of Cohn it appears that the reference to the referee, although made to him as "special master," had to do with a petition for discharge, and as such was referable to him under the General Orders of the Supreme Court, and he is not, therefore, entitled to special compensation for the hearing and consideration of the same.

I am authorized to state that Judge TRIPPETT concurs in my views as announced herein, and the course of procedure as hereinabove outlined will be followed in both courts of this district.