## In re McNEIL CORPORATION.

### (District Court, D. Massachusetts. March 13, 1918.)

### No. 25375.

1. BANKRUPTCY ⬡═223—COURT—JURISDICTION—SCOPE.

Under Bankr. Act July 1, 1898, c. 541, §§ 40, 52, 62, 30 Stat. 556, 559, 562 (Comp. St. 1916, §§ 9624, 9636, 9646), relating to compensation of referees and clerks, the question whether a referee in bankruptcy is entitled to an allowance for certain expenses is one within the general jurisdiction of the bankruptcy court.

2. BANKRUPTCY ⬡═223—COURTS—ORDERS—COLLATERAL ATTACK—DEPARTMENT OF JUSTICE.

An order of the bankruptcy court relating to expenses of referees and clerks being within its jurisdiction is not open to collateral attack, and the Department of Justice, if desiring to question such orders or expenses, must do so directly by intervening in a bankruptcy case if it has standing so to do.

3. BANKRUPTCY ⬡═223—REFEREES—EXPENSES.

Under Bankruptcy Act, §§ 40, 62, declaring that referees shall receive as full compensation for their services a fee of $15, and that the actual and necessary expenses incurred by the officers in the administration of an estate shall be reported and approved or disapproved by the court, and General Order in Bankruptcy No. 26 (89 Fed. xi, 32 C. C. A. xi), requiring the referee to keep an accurate account of his traveling and incidental expenses and those of any clerk or any officer attending him, the referee, being a judicial officer exercising much of the bankruptcy court's powers, may, where reasonably necessary, hire clerical assistance and the expense thereof is properly chargeable against the estate in which it is necessary, so expenses of clerical assistance in sending out notices to creditors may be charged against the estate.

---

⬡═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⊙═223—CLERKS—EXPENSES.

Under General Order No. 35 (89 Fed. xiii, 32 C. C. A. xiii), declaring that the statutory compensation of clerks shall not include expenses necessarily incurred in publishing or mailing notices or other papers, a clerk of a court of bankruptcy is entitled to reimbursement from an estate for the expense of sending notices to creditors.

5. BANKRUPTCY ⊙═223—REFEREES—EXPENSES.

Referees under Bankruptcy Act, §§ 40, 62, and General Order No. 26, are, where reasonably necessary, entitled to maintain offices for the transaction of their business as such, and the expense of maintaining such office may be prorated and charged to the various estates referred.

6. BANKRUPTCY ⊙═223—REFEREES' EXPENSES—COMPUTATION.

General Order No. 26, requiring a referee to keep accurate accounts of his traveling and incidental expenses, and of those of any clerk or other officer attending him, does not require the expenses of clerical assistance in sending out notices to be computed for each particular case, but such expense may be based on a general average arrived at by careful computation and estimate covering many cases.

7. BANKRUPTCY ⊙═223—REFEREES' EXPENSES—DISCRETION.

Though an estate revests in the bankrupt, where a composition is accepted by creditors and confirmed by the court, and the question whether a final meeting of creditors is necessary is doubtful, yet a referee, according to his practice, having called such meeting and sent out notices, may recover from the estate for such notices, no abuse of discretion appearing.

8. BANKRUPTCY ⊙═438—COMPOSITION—ACCEPTANCE—EFFECT.

Where a composition is accepted by the creditors and confirmed by the court, the estate thereupon revests in the bankrupt.

In Bankruptcy. In the matter of the bankruptcy of the McNeil Corporation. On petition of the referee for allowance and payment of expenses. Petition granted.

Henry E. Warner, referee in bankruptcy, of New York City, pro se.

James S. Allen, clerk of court, of Boston, Mass., pro se.

James M. Olmstead, of Boston, Mass., amicus curiæ, for Association of Referees for New England States.

MORTON, District Judge. The McNeil Corporation, before adjudication, filed an offer in composition. This offer was assented to by the requisite number and amount of creditors, was approved by the referee, and was confirmed by the court. The required deposit was made with the clerk. The purposes for which the deposit was made were stated on the form entitled, "Summary of Composition Deposits," and included, "Referee's expenses not paid, $24." Upon the confirmation by the court of the composition offered, it was ordered that the sums deposited by the bankrupt be paid out by the clerk "according to the terms of the composition." To the same effect was the order for distribution of composition made in accord with form No. 63 (89 Fed. ix, 32 C. C. A. ix) annexed to the General Orders to Bankruptcy. No objection was made to the entry of these orders, and no appeal was ever taken therefrom.

The referee applied to the clerk for the payment to him of the $24 deposited for his expenses as above stated. The clerk, solely because of circular No. 757 under date of November 26, 1917, issued by the Attorney General to clerks of the United States District Courts, refused

to make the payment. The referee thereupon filed the present petition praying that such payment be ordered. The Department of Justice was advised of the proceedings by the clerk with the suggestion that the Attorney General might perhaps desire to be heard thereon. The reply was, in substance, that the department did not regard circular 757 "as an order to clerks, or referees, but simply as advice to them of the views of the department and the fact that certain suits had been filed." See U. S. v. Waters, 133 U. S. 208, 10 Sup. Ct. 249, 33 L. Ed. 594. Certain suits (which I understand to be those referred to) have since been decided adversely to the government's contention. U. S. v. Brainerd (District Court, Eastern District Oklahoma) 250 Fed. ——, opinion Pollock, J., February 6, 1918.

The items charged by the referee which are drawn in question by the proceedings are the following:

"(1) Expense of services of clerical assistant to referee in this case; charge fixed by general order of the court. 'General Expense,' so called. $2.00.

"(2) Expense of sending notices of first meeting to 72 creditors at 7 cents per creditor. $5.04.

"(3) Expense of sending 20 letters to creditors at 7 cents. $1.40.

"(4) Reserve for expense of calling a final meeting—notices to 72 creditors at 7 cents. $5.04.

"(5) Cost of blanks used by the referee, charge fixed by order of the court. $.15.

"(6) Traveling and transportation expenses to and from referee's office to place of meeting divided among cases considered. $.09.

"(7) Expense incurred by the clerk of the District Court in sending notices to creditors and their attorneys of the bankrupt's petition for confirmation of the composition offer, at 5 cents a notice. This rate of charge is fixed by order of the court. $3.80.

"(8) Reserve for expenses of the clerk of the District Court to be incurred in sending notices to creditors and their attorneys, of the bankrupt's petition for the return of the balance of the composition deposit, and limit of time for proving claims. This rate is fixed by order of the court at 5 cents a notice. $3.80."

The view of the Department of Justice, as I understand it, is that these expenses are not allowable under the act, except perhaps the small items for cost of blanks and traveling expenses; that the other matters are covered by the statutory fee allowed to the referee for services. The items in question may be grouped for the purposes of discussion in two classes: (a) Expenses of sending notices and letters; (b) general expenses.

As to (a): Ever since the present act went into effect, the referees in this district have, by order of court, charged the cost of preparing and sending the notices required by law. The amount fixed therefor has been ascertained by computation from time to time in the different referee's offices, and has been changed to meet the varying conditions in a reasonable way. The charge is not the same throughout the district. As to the referee for Middlesex county, whose charges are under discussion, the rate for notices was established at 7 cents by an order of this court entered December 5, 1914. It had previously been 5 cents, and the increase was made because of the increased cost of the work. It represents, in connection with that part of the $2 charge (hereafter discussed) which is used for clerk hire, the actual cost of the

work to the referee, as nearly as it can be ascertained. There is no reason to believe that it was improperly or unwisely fixed. I do not understand that any such suggestion has been made from any quarter. If the expense of preparing and sending notices may be allowed by special order of court, the charge is a proper one in this case.

Two items in the expenses for notices should be specially referred to. They are the sums charged and reserved respectively by the referee, for account of the clerk to reimburse him for the expense of notices to creditors which had been sent and which were to be sent by him, at 5 cents each. (Items 7 and 8, supra.) In the practical administration of the act it had been found more convenient for these sums to be collected in the first instance by the referees and paid over by them to the clerk. The clerk's charge of 5 cents was established by a special order of this court on June 1, 1912. The practice in regard to the collection of the charge as above described seems to have grown up without any special order. It has obtained for many years. As to these items, the referee is endeavoring to collect them in order to repay them to the clerk. The right of the clerk to charge for them is thus necessarily involved in the present proceedings.

As to (b), the charge for clerical and general expenses, $2: This charge also was established by the late Judge Francis C. Lowell in connection with the original organization of the bankruptcy work in this district under the present act and has been in force ever since without objection. No order of court was formally entered covering it, but the referees were notified by Judge Lowell concerning it, and a formal letter approving it was sent by him to the present referee under date of February 26, 1903, in connection with a re-examination of the fees of referees in view of the amendment to the act passed at that time. There can be no doubt that what Judge Lowell did had the force and effect of an order of court, although, so far as now appears, it was never formally entered upon the docket. This charge was intended to cover general clerical expense, and incidental expenses, e. g., rent, where the referee maintained a separate office for bankruptcy work. The referee in the present case does maintain such an office entirely separate from his law office and in a different building, where he maintains a clerical force which does nothing but attend to the bankruptcy business. It is necessary for him to do this on account of the large number of cases which go to him. The office is well and economically run; the management of it was highly commended to me within a year by an examiner from the Department of Justice. As to the foregoing facts, I believe there is no dispute, and indeed no room for fair difference of opinion.

[1, 2] Coming to the questions of law involved, section 40 of the Bankruptcy Act relates to "Compensation of Referees." It provides in substance that they "shall receive as full compensation for their services * * * a fee of fifteen dollars * * * and twenty-five cents for every proof of claim filed for allowance," and also certain percentages. Section 52 relates to the compensation of clerks and provides that they shall "receive as full compensation for their serv-

ice to each estate a filing fee of ten dollars." Section 62, relating to the "Expense of Administering Estates," provides that:

"The actual and necessary expenses incurred by officers in the administration of estates shall * * * be reported * * * and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

By section 53 (Comp. St. 1916, § 9637) the Attorney General is required annually to lay before Congress tables showing, among other things, "the expenses of administering said estates"; and by section 54 (section 9638) the referees are required to furnish him with information for statistical purposes upon his request. By section 30 (section 9614) the Supreme Court is authorized to make all necessary orders as to procedure and for carrying this act into force and effect.

Under this last section the Supreme Court passed the General Orders in Bankruptcy, of which 26 (89 Fed. xi, 32 C. C. A. xi) requires the referee to keep accurate accounts of "his traveling and incidental expenses and of those of any clerk or other officer attending him (the referee) in the performance of his duty in any case which may be referred to him." By G. O. 35 (89 Fed. xiii, 32 C. C. A. xiii) it is provided that:

"(2) The compensation of referees prescribed by the act shall be in full compensation for all *services* (italics mine) performed by them under the act or under these General Orders; and shall not include *expenses* (italics mine) necessarily incurred by them in publishing or mailing notices, in traveling or in perpetuating testimony, or other expenses necessarily incurred in the performance of their duties under the act and allowed by special order of the judge."

Such being the law applicable to the case, I proceed to consider the application of it to the items under discussion.

Each of the charges in question was expressly authorized by order of the District Court. Whatever be the true construction of the act in the particulars under discussion, it seems hardly doubtful that the determination of the referee's expenses thereunder is within the general jurisdiction of that court under the act, nor that the court has power upon investigation to determine the actual expense of services like those in question and by order to authorize a charge therefor, as was done in this case. If so, such orders and charges in conformity therewith cannot be collaterally attacked. U. S. v. Brainerd, supra, citing authorities. The clerk is bound to obey and recognize them. If the Department of Justice desires to question such orders or expenses, it should do so by intervening in a bankruptcy case and attacking them directly, if it has standing to do so—which I doubt. It would seem to me that the questions are to be dealt with by the Supreme Court under General Orders if it see fit to do so; otherwise, by the District Courts.

This would be sufficient to dispose of the present case and to require an order granting the prayer of the petition. But as the statutory authority for each of the several charges in question has been discussed, and is the question at the base of the controversy, it is, perhaps, advisable to consider the charges on the merit in the present proceeding.

249 F.—49

[3] First as to clerical expenses: These have been explicitly recognized by the Department of Justice, and the referees have, for several years at least, been called upon to state them on Form 1, under section E 2 (c). They are, as has been noted, explicitly referred to in General Order 26 (89 Fed. xi, 32 C. C. A. xi). Section 62 of the act providing for the repayment to the referees of "actual and necessary expenses" is to be read with these facts in mind. Moreover, the Bankruptcy Act, being a commercial statute, should receive a practical construction. It would be wholly impossible for a referee, whose duties require the constant employment of two clerks to perform them properly, to do that work unassisted in addition to his judicial duties under the act. To limit the number of cases sent to a referee to those in which he was personally able to perform the clerical work required would be to put the referee on the basis of mere clerks, which I do not think the act intends. Referees are in fact judicial officers exercising the powers of the court to a large extent. "He exercises much of the judicial authority of that court," Gray, J., White v. Schloerb, 178 U. S. 542, 546, 20 Sup. Ct. 1007, 44 L. Ed. 1183. In view of General Order 26, it seems clear that the Supreme Court understood that the referee had the power to employ clerks if necessary in the performance of his duties; and there are many decisions of lower courts to the same effect. See In re Pierce (D. C.) 111 Fed. 516, 517; In re Dixon (D. C.) 114 Fed. 675, 676; In re Mammoth Pine Lumber Co. (D. C.) 116 Fed. 731, 736; In re McCubbin Co., 33 Am. Bankr. Rep. 277; In re Tebo (D. C.) 101 Fed. 419, 421. In this last case Judge Jackson said:

"In regard to the allowance of clerk hire, the court is of opinion that no referee can, without the aid of a clerk or such other officer as he may require, discharge his public duties. This is a matter largely within the discretion of the referee, which discretion, if abused, would justify the court in removing him. While Bankr. Act, § 64b, par. 3, does not mention clerk hire as being embraced in the cost of administration, yet the paragraph does not forbid it, and this court is of opinion that it is a necessary incident to the referee, in the due administration of his office, as he is, in fact, the judge of the bankrupt court."

In these views I fully concur. A referee is not obliged under the act to perform all the clerical work of his office himself. He may, where reasonably necessary, hire clerical assistance, and the expense thereof is properly chargeable against the case in which it is used. The charges here in question for notices are in substance a charge for clerk hire. While not arrived at by timing the clerks on this particular case, they are the result of careful calculation and represent the average cost of the work done. They seem to me to be allowable as to the notices sent by the referee.

[4] As to the notices sent and to be sent by the clerk: Much of the foregoing discussion is applicable to these, but there is one provision in the General Orders which relates solely to the clerk. General Order 35 (89 Fed. xiii, 32 C. C. A. xiii) explicitly provides that the statutory compensation of the clerks shall "not include * * * expenses necessarily incurred in publishing or mailing notices or other papers." It seems to follow that the clerk is entitled to charge the

reasonable expense of preparing and sending notices required to be sent by him including the expense of clerical assistance. The present rate therefor, five cents each, represents as nearly as can be ascertained the actual cost of that work. The clerk may properly make that charge for it and it may be collected for him by the referee. The question is immaterial so far as the clerk's personal interest is concerned, because his office returns each year to the government a large surplus over and above all its expenses, including his own compensation.

[5] As to the charge for clerical and general expense: What has been said disposes of all the items in question except the charge for clerical or general expense and a point as to item 4, which will be discussed later. Most of the $2 charge for general expense (item 1, supra) is used to pay clerk hire, and is covered by what has been already said. It covers the general work of the referee's clerks on the cases, other than that of preparing and mailing notices. Part of it is used to pay the rent of the office (which, as stated, is devoted exclusively to bankruptcy purposes), and the incidental expenses of that office. As I have already said, I regard the maintenance of such an office as so advantageous to the public and to persons interested in the bankruptcy cases in charge of the referee that, in my opinion, under the conditions actually existing here, such an office for this referee may fairly be said to be necessary. It has been maintained by him and his predecessors substantially as at present ever since 1898. The cost of it is an actual and necessary expense incurred by the referee in the performance of his duties. This exact question arose in Re McCubbin Co., ubi supra, and I agree with what is there said about it. No doubt conditions differ in different localities, and it might well be that, in a country district with a comparatively small number of cases, such an expense would not be reasonably necessary; but under conditions existing in Boston, with reference to which this referee's office is maintained and charge therefor is made, I am of opinion that it is justified.

[6] This charge for clerical or general expense, like the charge for notices, does not represent an actual computation of the expense of the particular case. It is a general average arrived at by careful computation and estimate covering many cases. Such a method of ascertaining overhead expenses is well recognized in business and seems to me proper in this instance. The language of General Order 26 does not, I think, preclude such a method of ascertaining it.

It should perhaps be stated as to all the items under discussion that the referee derives no financial benefit therefrom. They are fixed as accurately as may be to provide an income equal to the actual expenses; and the balance year in and year out is very nearly even.

[7, 8] There remains one further question. Item 4 relates to expenses to be incurred by the referee in calling a final meeting. The composition was accepted by the creditors and confirmed by the court. The estate thereupon revested in the bankrupt. Whether, under such circumstances, a final meeting is necessary in order to close the estate, is a question of some doubt. The referee here in question has customarily called such a meeting; other referees, I believe, do not do

so. This is a matter of practice in the referee's office which must be left largely to his discretion. I see no reason to believe that the discretion was improperly exercised in this instance.

The result is that as to each of the several items in question the referee is entitled to charge therefor and the sum in question should be paid to him by the clerk. An order may be ordered to that effect.