UNITED STATES v. WARD et al. (two cases). SAME v. BRAINERD et al. SAME v. MATTHEWS et al.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1919.)

Nos. 5223–5226.

1. BANKRUPTCY ⊜⟆230—REFEREES—LIABILITY ON OFFICIAL BOND.
    Where a referee has collected from parties or estates in bankruptcy proceedings moneys as compensation to which he is not legally entitled, and these fees have been collected or withheld from parties who are numerous, and the individual amounts small, the United States may maintain a single action on his bond, on behalf of all parties injured, to recover back such illegal fees.

2. BANKRUPTCY ⊜⟆230—ACTION ON REFEREE'S BOND—COMPLAINT—NAMING OF USE PLAINTIFFS.
    In an action by the United States on the official bond of a referee in bankruptcy, on behalf of numerous parties from whom he has collected

⊜⟆For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

.illegal fees, it is not necessary that all such parties should be named in the complaint.

3. BANKRUPTCY ☞223—REFEREES—COMPENSATION.

Where a duty is imposed upon a referee by the bankruptcy law, and compensation is also fixed for its performance, the bankruptcy court has no power or authority to allow any further compensation.

4. BANKRUPTCY ☞223—REFEREES—COMPENSATION.

Where a duty is clearly imposed by the bankruptcy law upon a referee, and no specific compensation is fixed for its performance, the compensation expressly authorized by the law as a whole is the only compensation which he can receive, or that the court has power to allow.

5. BANKRUPTCY ☞230—REFEREES—ACTION TO RECOVER FEES ILLEGALLY COLLECTED—EFFECT OF ALLOWANCE BY COURT.

A court of bankruptcy being without jurisdiction to allow a referee under any form or guise any other or further compensation than expressly authorized and prescribed by the bankruptcy law, such allowance, if made, does not bar an action for its recovery.

6. BANKRUPTCY ☞223—ALLOWANCE OF EXPENSES TO OFFICERS—REVIEW.

An allowance by a court of bankruptcy of necessary expenses incurred by officers in administration of estates, which under Bankruptcy Act July 1, 1898, § 62 (Comp. St. § 9646), is within the power of the court, is not subject to collateral attack, but can only be reviewed by direct proceedings.

7. BANKRUPTCY ☞223, 224—POWERS OF BANKRUPTCY COURT—APPOINTMENT OF SPECIAL MASTERS.

A court of bankruptcy may, in the exercise of a sound discretion, refer issues to special masters, and may name a referee as such special master, and his fees and expenses as such are within the control of the court, and its judgment in such matters is not subject to collateral attack.

8. BANKRUPTCY ☞223—POWERS OF BANKRUPTCY COURT—EXPENSE ALLOWANCE TO REFEREES.

A court of bankruptcy may authorize a referee to employ a clerk and allow an expense for stationery, office rent, light, heat, and phone, and such authorizations may be made by standing rule or order, or by special order in any particular case.

9. BANKRUPTCY ☞230—REFEREES—ACTION TO RECOVER FEES ILLEGALLY COLLECTED—"JUDICIAL ACT."

The taking of fees by a referee in excess of those prescribed by the statute is not a "judicial act," and as such protected from an action for an accounting.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Judicial Act.]

10. BANKRUPTCY ☞230—REFEREES—LIABILITY OF SURETIES.

Sureties on the bond of a referee conditioned for the faithful performance of his official duties are liable for fees illegally collected or retained by him.

11. JUDGES ☞24—"JUDICIAL ACT."

A "judicial act" is an act of a court or magistrate in deciding a question of right litigated before him or referred by law to his judgment.

In Error to the District Court of the United States for the Eastern District of Oklahoma; John C. Pollock, Judge.

Actions by the United States against W. T. Ward and others (two cases), against Ezra Brainerd, Jr., and others, and against R. H. Matthews and others. Judgments for defendants, and the United States brings error. Reversed.

For opinion below, see 250 Fed. 1011.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Alvin F. Molony, Sp. Asst. U. S. Atty., of Muskogee, Okl. (W. P. McGinnis, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

J. L. Hull, of Muskogee, Okl., and H. C. Thurman, of Oklahoma City, Okl. (N. A. Gibson and T. L. Gibson, both of Muskogee, Okl., and J. H. Gordon and E. E. McInnis, both of McAlester, Okl., and J. S. Ross, of Oklahoma City, Okl., on the brief), for defendants in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. These are suits on bonds of referees in bankruptcy to recover fees, costs, commissions, and compensation alleged to have been illegally collected and received by them in excess of the amount allowed by law. They were brought by the United States on its own behalf and on behalf of various suitors and parties interested in the administration of bankrupt estates. The defendants in each case are the referees and the sureties on their official bonds. The items for which a recovery is sought are stated in detail in exhibits attached to the complaints. These items may be grouped under three heads: (1) Services for which the bankruptcy law fixes the compensation. (2) Services for which the compensation is fixed by the United States District Court. (3) Costs and expenses allowed by said court.

[1] The defendants filed general demurrers, which were sustained. The United States electing to stand on its complaints, judgments dismissing the same followed. The condition of each bond sued upon was for the faithful performance of the official duties of the respective referees. The United States was the obligee, and the law provides that the bond may be sued upon, in the name of the United States for the use of any person injured by a breach of its condition. In our opinion, Congress intended that the bond should protect private individuals as well as the United States. The requirement that referees in bankruptcy should execute a bond for the faithful performance of their duties was an assurance to persons interested that, within the penalty of any bond taken from them by the United States their rights would be protected against any act or omission on the part of referees resulting to their injury. Howard v. United States, 184 U. S. 676, 692, 22 Sup. Ct. 543, 46 L. Ed. 754.

The case cited was an action by the United States, for the use of one David D. Stewart, against the sureties on the official bond of one Watson, formerly clerk of the United States Circuit Court for the Western District of Missouri. Stewart had brought a suit against Henry county, Mo., to recover the amount of three bonds issued by it. The county, when it answered, paid to Watson $2,525 as a tender to the plaintiff, and thought it was depositing the money in court; but Watson did not think so, and converted the same to his own use. The condition of Watson's bond was that he would faithfully discharge the duties of his office and seasonably record the decrees and determinations of the court of which he was clerk. Not-

withstanding Watson's bond was silent as to his accounting for money coming into his hands as clerk, and notwithstanding there was nothing in the bond or in the law that provided for any one bringing a suit on the bond other than the obligee, the United States Supreme Court allowed a recovery against the surety, Howard. We therefore think that upon principle and authority, where a referee has collected, from parties or estates in bankruptcy proceedings, moneys as compensation that under no theory of the law was he entitled to, and these fees have been collected or withheld from parties who are numerous and the individual amounts small, the United States has the legal and moral right to bring one suit in behalf of all parties injured, to recover back compensation illegally exacted by him. Any other view would render a referee's bond largely valueless in respect to such matters.

[2] The names of the individuals for whom the United States sues are not given in the complaint, but this is not always necessary. It is a matter upon which no issue can be made. American Bonding Co. v. Allison, 182 Fed. 810, 105 C. C. A. 242; Schott v. Youree, 142 Ill. 233, 31 N. E. 591; Clarkson's v. Doddridge, 14 Grat. (Va.) 42; Boston El. Ry. v. Grace & Hyde Co. et al., 112 Fed. 279, 50 C. C. A. 239; United States v. Abeel, 174 Fed. 12, 98 C. C. A. 50.

[3, 4] Counsel seem to treat the items sued for as belonging all to one class, and the trial court so treated them; but manifestly they cannot be so treated. Coming to the merits, we think it must be conceded that where a duty is imposed upon a referee by the bankruptcy law, and compensation is also fixed by that law for the performance of that duty, no power or authority exists in the United States District Court sitting as a court of bankruptcy to allow him any other or further compensation for the performance of the duty than that fixed by the bankruptcy law, and it must be further conceded that where the duty to be performed is a duty clearly imposed by the bankruptcy law upon the referee as such, and no specific compensation is fixed for the performance of said duty, the compensation fixed by the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. §§ 9585–9656]) as a whole is the only compensation which the referee can receive or that the court has power to allow. Section 72 of the Bankruptcy Act as amended (section 9656) reads:

"Neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this act."

General Order 35 (89 Fed. xiii, 32 C. C. A. xiii) provides:

"The compensation of referees, prescribed by the act, shall be in full compensation for all services performed by them under the act, or under these general orders." In re Halbert, 134 Fed. 236, 67 C. C. A. 18; In re Langford (D. C.) 225 Fed. 311, 314, 315; Dressel et al. v. North State Lumber Co. (D. C.) 119 Fed. 531.

The administration of the bankruptcy law existing prior to the enactment of the present one had been attended by grave abuses and scandals, resulting from the absorption of bankrupt estates in fees and costs of the officers connected with its administration. Congress therefore by the above legislation intended to cure the evil so

far as possible, and the courts should construe the law with reference to the object that Congress had in mind.

[5] The language of the complaint, in referring to the items which it is sought to recover, speaks of them as having been allowed to the referees. The trial court assumed, and it may have been justified in so doing; that it had the right to consider the excess fees, costs, and compensation as having been allowed by the United States District Court. The case being thus viewed, it sustained the demurrer by invoking the general principle that, where a court has once acquired jurisdiction, it has the right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed. The general principle as stated is correct, but, like all general principles, is subject to many qualifications in its application. The District Courts have a general jurisdiction in bankruptcy, but they have no power, when exercising that jurisdiction, to allow a referee, under any form or guise, any other or further compensation for his services as referee than that expressly authorized and prescribed by the bankruptcy law. It cannot transcend the power conferred by law. If a court has jurisdiction of an action on a money demand, it cannot in that action imprison the defendant. If it has jurisdiction of an action for libel, specific performance of a contract cannot be decreed in that action. If it has jurisdiction of an action for the possession of real property, the court cannot in that action probate a will. Such judgment, if rendered, would not be merely erroneous, but absolutely void. Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; United States v. Walker, 109 U. S. 258, 3 Sup. Ct. 277, 27 L. Ed. 927; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872.

The principle invoked is better stated by Justice Swayne in Cornett v. Williams, 20 Wall. 250, 22 L. Ed. 254, as follows:

"That jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud."

In United States v. Walker, supra, Justice Woods said:

"Although a court may have jurisdiction over the parties and the subject-matter, yet, if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void."

When a court has power to fine only, and it also imprisons, the imprisonment is void. Ex parte Lange, supra.

[6] We are therefore of the opinion that the allowance of compensation by the District Court, other or different, or in addition to, that provided by the bankruptcy law for services clearly imposed upon a referee by said law, is beyond its jurisdiction and void, and its judgments may be attacked collaterally. The statute prohibits the court from exercising any judgment in the matter. There are many items sued for in these actions where this rule does not apply. Section 62 of the Bankruptcy Act (Comp. St. § 9646) provides:

"The actual and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved

by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

And General Order 26 (89 Fed. xi, 32 C. C. A. xi) provides:

"Every referee shall keep an accurate account of his traveling and incidental expenses, and of those of any clerk or other officer attending him in the performance of his duties in any case which may be referred to him; and shall make return of the same under oath to the judge, with proper vouchers when vouchers can be procured, on the first Tuesday in each month."

We are of the opinion that, within the limitations of these provisions, the allowance of necessary expenses in bankruptcy proceedings is within the power and control of the United States District Court, both as to the occasion therefor and the amount thereof, and if parties are aggrieved by the action of the court in this behalf, they must, by petition for review or appeal, bring the matter directly before an appellate tribunal, and that, if this is not done, the judgment becomes final and is not subject to collateral attack.

[7] We are also of the opinion that General Order No. 12 (89 Fed., vii, 32 C. C. A. vii) does not limit the United States District Court in appointing special masters to the case of an application for a discharge, the approval of a composition, or for an injunction to stay proceedings of a court or officer of the United States or of a state. We think the United States District Court sitting in bankruptcy cases may, in the exercise of a sound discretion, refer issues to special masters and name a referee as such special master; that the fees and expenses of such special masters are matters within the control of the United States District Court (Fellows v. Freudenthal, 102 Fed. 731, 42 C. C. A. 607; In re Lacov, 134 Fed. 237, 67 C. C. A. 19; In re Tracy, 179 Fed. 366, 102 C. C. A. 644; In re King, 179 Fed. 694, 103 C. C. A. 240; In re Langford [D. C.] 225 Fed. 311; In re Harrison Bros. [D. C.] 197 Fed. 321; Collier on Bankruptcy [11th Ed.] 1184); that its judgments with reference to these matters, unless presented to an appellate tribunal by petition to revise or appeal, become final and are not subject to collateral attack.

[8] We are also of the opinion that the United States District Court may authorize the referee to employ a clerk, and allow an expense for stationery, office rent, light, heat, and phone, and that these authorizations may be made by standing rule or order as well as by special order in any particular case. In re McCubbin Co., 33 Am. Bankr. Rep. 280; In re Pierce (D. C.) 111 Fed. 516; In re McNeil Corporation (D. C.) 249 Fed. 765.

[9, 11] In view of the arguments made by counsel for defendants, and by reason of language used in the opinion of the court below, it is well to state that these suits are not brought to recover damages from referees for their judicial acts, and therefore a discussion as to the responsibility of judicial officers for their acts is not relevant. It would seem to be argued by counsel that the taking of a fee conceded to be unlawful by a referee is a judicial act, and that he cannot be made to account therefor. Can it be said that if there is $500 disbursed to creditors by a trustee, and the referee takes 2 per cent. thereof as a commission, when the law allows only 1 per cent., that this is a judi-

cial act? A judicial act is an act of a court or magistrate in deciding a question of right litigated before him or referred by law to his judgment.

In the case above supposed, there would be no litigation, and the law referred nothing to the judgment of the referee. The proceeding was simply one to find 2 per cent. of $500, a mere mathematical calculation, ministerial in its quality beyond question; moreover, there could be no judicial act by a judge acting in his own case. It is again claimed that the United States cannot recover in this action, because the beneficiaries could not recover. The reason alleged for this position is that the beneficiaries would be bound by the judgment from which they did not appeal. We have already indicated when this rule would apply and when it would not.

[10] In behalf of the sureties it is urged that the condition of the bond would not cover moneys collected in the form of illegal fees; that to take illegal fees may be entirely consistent with a faithful performance of the duties of the office of referee. We do not think so. There is a duty imposed by law on referees to receive none but legal fees. If they do otherwise, they are not faithfully performing their duty. In the case of Howard v. United States, supra, the clerk was held for the misappropriation of funds paid to him as clerk, and the condition of his bond, so far as the present case is concerned, was the same as the condition of the bonds now in suit.

The judgment below in each of the above cases is reversed, and the causes remanded, with instructions to overrule the demurrers and allow the defendants to answer, if they are so advised, and to otherwise proceed in said cases in conformity to the views herein stated.